## Coxe *et al.*, Ex'rs *versus* England and Brown.

1. In an action of trespass for cutting timber, its value was to be ascertained by the price of such timber in the vicinity, not by evidence of the net value in a distant market.

2. Proof in this case of contents of a lost paper not sufficient.

3. J. by power of attorney authorized C. to sell lands; this did not authorize C. to substitute an attorney under him.

4. C. substituted L., who made a contract for the sale of timber on the land reciting a former contract. L.'s contract was not admissible as evidence of the first contract.

5. In an action of trespass by J. for cutting timber, evidence by the defendants who defended under authority from C., that J. had said to another person that he had authorized C. to sell timber was admissible.

6. An agreement by C. as attorney for J. selling timber to L. was found amongst J.'s papers after his death, endorsed "not executed." *Held*, not to be evidence of C.'s authority to sell.

7. Hazleton Coal Co. *v.* Buck Mountain Coal Co., 7 P. F. Smith 301; Pattison's Appeal, 11 Id. 294, remarked on.

March 30th 1870. Before Thompson, C. J., Agnew, Sharswood and Williams, JJ., Read, J., at Nisi Prius.

Error to the Court of Common Pleas of *Elk county* : No. 182, to January Term 1870.

This was an action of trespass *q. c. f.* by Alfred Cox and Ferdinand Cox, executors, &c., of John Redman Cox, deceased, against E. B. England and Jacob Brown, for damages under the 2d sect. of the Act of March 1824 (8 Smith L. 283; Purd. 961 pl. 2) for cutting timber. The title to the land from which the timber was cut was vested in the decedent December 22d 1840. He died about March 28th 1864, having made his will proved on that day; the plaintiffs were the executors of the will.

The case was tried November 2d 1869, before Johnson, P. J.

The plaintiffs gave evidence of cutting timber by Brown, one of the defendants, in 1860, on the land of decedent near Kersey, and of the presence of England whilst the cutting was going on, and gave evidence as to the value of such timber; they then offered to prove the price of logs at Williamsport as the nearest market; there being no market value for timber on the stump at Kersey. The defendant objected to the offer, which was rejected and a bill of exceptions sealed.

[Coxe *v.* England.]

It was admitted that the defendants took timber from the land : and the plaintiffs closed.

The defendants gave in evidence a power of attorney, dated January 13th 1847, from the decedent to J. R. Cox, Jr. (his son), "to contract and execute articles of agreement for the sale and conveyance of all or any part of my unimproved lands, in the counties of Lycoming, Clearfield and Elk, in the said state of Pennsylvania, for such prices per acre as he may be able to obtain for the same," &c.

They then called J. G. Hall and exhibited to him a contract dated February 17th 1863, between J. R. Coxe, Jr., " by his attorney in fact or agent Lorenzo Lewis Coxe," (his son), and Elijah B. England. The witness testified : " This contract is in my handwriting ; I think L. L. Coxe had a paper, which was a power of attorney from his father to act in the matter ; the contract between England and J. R. Coxe, Jr., was present ; do not know who brought it there."

Defendants offered to prove that when L. L. Coxe was then negotiating with defendants, making a new contract, and having what was a power of attorney from his father, he claimed to be acting as the agent of his father.

The plaintiffs objected to the offer ; the evidence was admitted and a bill of exceptions sealed.

Witness proceeded : " I saw a power of attorney from J. R. Coxe, Jr., to L. L. Coxe, his son, and he claimed to be representing his father under that power, and so signed the contract, written and witnessed by me ; he kept the power of attorney to himself, and is now dead, as also his father." " I can't state who produced the contract between J. R. Coxe, Jr., and England ; I know L. L. Coxe had a power of attorney, but can't say certainly it was present there, nor have I seen it since about that time ; I don't know the handwriting to the power of attorney L. L. Coxe had."

The defendants then offered the contract in evidence in connection with the other papers following :—

Contract :—

* * * "That a certain article of agreement, dated the 16th of October, A. D. 1858, between the said parties, J. R. Coxe and E. B. England, by which article said Coxe agreed to sell and convey, in consideration of the sum of three thousand dollars, all the trees then standing or fallen, that will answer for merchantable lumber, &c., * * * is hereby cancelled and hereafter void : And whereas, the said England has already paid the three thousand dollars, mentioned as consideration money in said article, to said Coxe, it is hereby agreed between the parties that for the said moneys so paid, the said E. B. England is to have and keep without further charge, the timber or saw-logs he has already taken off said land, previous to this lumber season, and to have the right

[Coxe *v.* England.]

to take off, in merchantable saw-logs of pine timber, an additional amount of six millions of feet, board measure, including therein all cut since the 1st day of October 1862, and to be run to market this season, &c.; * * * and he is to have five years from the time Laurel Run shall be opened, so as to be navigable for float-ing logs, to cut and remove the saw logs, &c.

(Signed),　　　　　"JOHN REDMAN COXE, JR. [SEAL].
　　　　　　　　　　"By his attorney in fact,
　　　　　　　　　　　　L. LEWIS COXE, M. D.,
　　　　　　　　　　　　E. B. ENGLAND [SEAL]."

Letter from J. R. Coxe, Jr., viz.:—

"September 29th 1859.
"E. B. England, Esq.

"Dear Sir: I waited for you as long as possible, but impera-tive business compels me to leave. Should you have the money for me, pray leave it with Mrs. Coxe, who will give you a receipt in my name."

Draft and receipt, viz.:—

"Williamsport, September 3d 1860.
"$1000　　　　　　No.
"Two months after date, pay to the order of J. R. Coxe, Jr., one thousand dollars, value received, and place to account of,
　　　　　"Yours, &c.,　　　　　E. B. ENGLAND.
"To C. & D. S. Cadwallader."
[Endorsed,] J. R. COXE, Jr.

"Received, September 29th 1859, of E. B. England, one thou-sand dollars, on account of pine timber as per contract, due the 16th of October.　　　　　"JOHN R. COXE, JR., M. D.
"$1000.　　　　　　Per MARY J. COXE."

Letters of J. R. Coxe, Jr., viz.:—

"Philadelphia, September 19th 1859.
"E. B. England, Esq., Williamsport.

"Dear Sir: I duly received some time since your letter an-nouncing your kind intention to send me a draft for $1000 on September 29th, and for which kindness I am greatly indebted.

"My object in now addressing you, is to inquire whether you still entertain the same intention, since as the 1st December is so near at hand, I would wish to be under no doubt whatever," &c.

"Philadelphia, June 14th 1860.
"E. B. England, Esq., Williamsport.

"Dear Sir: I received your letter of the 7th in due time, and was very sorry to learn the loss you had sustained by the breaking adrift of the boom. * * * I am grieved for your sake, that you have been so unfortunate with your lumber; and I am also sorry

[Coxe v. England.]

for myself, as I well know you would have advanced. for me, had it been in your power.   For my own part, I have, like many others, made some foolish speculations, and though they will ultimately pay well, say in from four to five years, yet so far they have only served to cripple me in money matters. * * * If I can by any means grant you an extension, you may be sure I will do so, as I have not forgotten your kindness in anticipating your last payment in order to gratify me.   I hope to see you here in July, by which time I may be able to make some arrangement satisfactory to both of us." * * *

"Philadelphia, August 28th 1860.
" E. B. England, Esq., Williamsport.

"Dear Sir: Your letter of the 24th inst. was received yesterday, and I hasten to reply.   I think I can use it.   I would willingly extend the time of your last payment, but I am unfortunately in a tight place; still a draft at two months, dated September 1st, would give you two weeks, and would answer my purpose, though of course not quite so well as cash."

"Philadelphia, October 6th 1860.
" E. B. England, Esq., Williamsport.

"Dear Sir: I duly received your letter enclosing a draft for $1000 at two months, but as I did not then need the money I made no effort to have it discounted.   To-day, however, I applied to the Consolidation and Philadelphia Banks for a discount, and they both refused.   They evidently, so I inferred, did not approve of Cadwallader as an acceptor.   I shall, therefore, have to wait until November 6th, when Cadwallader has promised to pay it at the Consolidation Bank.   As you requested me to inform you in case I did not get a discount, I now do so." * * *

The deposition of Mary J. Coxe, widow of J. R. Coxe, Jr.:

She testified that she saw a letter in her husband's hand in the summer of 1846; " it was written in the handwriting of my father-in-law, J. Redman Coxe, Sr., and referred to the sale of timber upon some land of his in Pennsylvania; I was in my husband's office at the time, and [I remember his suddenly saying to me: 'Here's some good news!' and then continuing: 'Father says I can sell the timber,' or 'have the timber;' 'off his land, and keep the money for myself,' or 'keep the proceeds;' it was good news; * * * my husband then read aloud to me that part of the letter which referred to this matter of the sale of the timber;] I went and looked over his shoulder for an instant as he was reading, and I remember noticing that the letter was in my father-in-law's handwriting.

[" My husband read aloud to me only that portion of the letter which I have already mentioned.   It was to the effect that my father-in-law made a present of the timber upon this land of his

[Coxe *v.* England.]

to his son, my husband. I do not remember the exact words, but I am certain that this was their substance. As I have before stated, I looked at the letter myself for an instant, as my husband was reading it. I remember its beginning 'My dear John,' but beyond this, I can only remember seeing that the words were what my husband was then reading aloud, and that the sense of them was that my father-in-law told my husband that he might have the timber on these lands, and sell it for his own benefit, as a gift from him, his father. I cannot say that I remember any sentences of the letter word for word, as they were written or read aloud. I have given to the best of my recollection the substance of that portion of the letter which I read and heard."]

She also testified as to search for the letter and that it could not be found.

The offer was made for the purpose of showing the sale of timber to England, and to show by secondary evidence the existence and contents of the contract of October 16th 1858, and for the purpose of showing the authority of J. R. Coxe, Jr., to sell the timber.

The offer was objected to by the plaintiff because, no authority was shown in L. L. Coxe; the contract of 1858 is not shown nor proved to have been executed by J. R. Coxe, Jr.; the receipt of money after the contract is no evidence of its execution; the statement in Mrs. Coxe's receipt that the payment was "for timber for contract," was without authority of J. R. Coxe, Jr., or his father; the draft had no connection with the contract; the letters are only admissions of what the agent had previously done; Mrs. Coxe does not prove the whole contracts of the letter; the power of attorney gives J. R. Coxe, Jr., no power to sell timber. The court admitted the evidence and sealed a bill of exceptions. There was also a separate bill of exceptions to the admission of Mrs. Coxe's deposition.

John Grier having testified to an interview with J. R. Coxe, Jr., as to a sale of timber on his father's land, defendants proposed to prove by him that about the year 1847 or 1848 he called on J. Redman Coxe, Sr., in Philadelphia, having learned his address from J. Redman Coxe, Jr., in the interview already stated. That in the interview the said Coxe, Sr., informed witness, that he had given to his son, the said J. R. Coxe, Jr., power and authority to sell the timber upon his lands in Lycoming, Clearfield and Elk counties, and referred witness to him as the proper person to make sale of such timber, and that upon inquiry as to payment, the said Coxe, Sr., stated to him that he did not consider the timber of much value, that his lands in Clearfield and Elk were chiefly valuable for their minerals, and that the timber was in the way of the settlers. That he had given the timber on said Clearfield and Elk county lands to his said son as compensation for his

[Coxe v. England.]

trouble in charge and care of his lands, to sell for his own benefit, and that he was authorized to receive payment for the same, and appropriate the proceeds to his own private use, and that as he had given such power to his son, he declined to make any sales of the timber himself, and referred the witness to J. R. Coxe, Jr., as the proper person to make sale of the timber, and that all payments made to him would be good payment to the purchaser.

The offer was objected by the plaintiffs, admitted by the court and a bill of exceptions sealed.

The testimony of the witness was in accordance with the offer.

In rebuttal, the plantiffs gave in evidence a paper found amongst papers of decedent endorsed "not executed," being an agreement dated April 23d 1849, between the decedent "by his agent and attorney J. R. Coxe, Jr.," and R. M. Stevenson. The paper was signed "John R. Coxe, by his agent John R. Coxe, Jr.," but not by Stevenson. It was for the sale to Stevenson of all the white-pine trees on land belonging to Coxe, granting to Stevenson privilege within twenty years to enter upon the land and cut and carry away the timber, to erect buildings, mills, &c., Stevenson to pay fifty cents per thousand in the manner set out in the agreement, Coxe to have a lien on the timber in the hands of Stevenson's factors, the contract to be void on Stevenson's failure to comply with the stipulation, &c., &c.

They also gave in evidence a letter dated December 3d 1847, from J. R. Coxe, Jr., to his father, advising him to adopt measures to sell the timber advantageously; advising him not sell immedi-. ately, with other matters tending to show that the ownership of timber was still in the father.

The plaintiffs submitted these points :—

5. That the evidence of Mrs. Coxe does not prove the contents of the whole letter from J. R. Coxe, Sr., to her husband, and is therefore not such evidence of the contents of a written paper as is requisite to get it before the jury.

7. That there is no evidence to submit to the jury of a ratification on the part of John R. Coxe, Sr., of the sale of the timber by John R. Coxe, Jr., to E. B. England.

The defendants submitted this point:—

If the jury believe from all the evidence in the cause that John Redman Coxe, Jr., had authority, either in writing or verbal, from John Redman Coxe, Sr., to make sale of the timber in controversy, and that in pursuance of such authority he sold the same to E. B. England, and that by virtue of such sale the said defendants entered upon the land, removed the timber and before the bringing of this suit, and paid the purchase price to John Redman Coxe, Jr., the plaintiffs cannot recover in this action.

An understanding of the case requires that the charge of the court should be given almost *in extenso ;* as follows :—

[Coxe *v.* England.]

" The question upon which this cause hinges is whether J. R. Coxe, Jr., had power or authority to sell the timber on the land of his father, known as tract No. 4892, in this county. If he had the plaintiff cannot recover. If he had not the plaintiff is entitled to recover—of the amount we will speak presently.

" The undisputed evidence is that J. R. Coxe, Sr., owned the land on which the timber in dispute grew: No. 4892, containing 490 acres, and that on the 13th of January 1847, he executed and gave to his son J. R. Coxe, Jr., a power of attorney to sell this and other lands or any part thereof, at such price as he pleased. J. R. Coxe, Jr., moved to Williamsport about 1845, remained about three years, then moved back to Philadelphia. The plaintiffs then offer evidence to prove that J. R. Coxe, Jr. had an additional authority from his father by letter, to sell the timber on his lands up in Clearfield and Elk counties, and that he did make sale of the timber on this tract in Elk county and one in Clearfield to E. B. England, one of the defendants.

" The letter from the father to the son is said to be lost, and the alleged contract from the son to the defendants is proved to have been destroyed.

" Having proved the existence and loss of these two papers the defendants then offer such proofs as they have of their contents.

" Of the letter from J. R. Coxe, Sr., to his son, and its contents, you have the testimony of his widow Mary J. Coxe.

" We think the fact whether the elder Coxe did write such a letter to his son, giving him authority to sell the timber for his own benefit and support, is one to be determined by you from this and certain other evidence in the case.

" In support of the position that the son J. R. Coxe, Jr., had authority or leave to sell the timber, the defendants offer for your consideration:

" 1. This evidence of Mrs. Coxe just read.

" 2. The testimony of John Grier, that the father refused to sell him timber, saying he had none to sell, but had authorized his son to sell all the timber on his land up in these counties.

" 3. That J. R. Coxe, Jr., did sell large amounts of timber off this and other lots, which the purchasers spent several years in taking off, and for which they paid the son large amounts of money, without protest or any complaint from the old man, and ask you to infer from this that he, the father, knew and acquiesced in what had been done.

" 4. [An agreement drawn up and signed by J. R. Coxe, Jr., as agent of his father, to sell to R. M. Stevenson a quantity of timber on his lands upon these waters, found among the papers of his father, and offered in evidence by the plaintiffs, by which they give the act and declaration of the son, affirmative of his authority to sell timber, thereby virtually admitting the son was exercising

[Coxe *v.* England.]

the right of selling the timber alone with the knowledge and acquiescence of his father, and that such acquiescence is evidence of authority.]

" 5. The letter of J. R. Coxe, Jr., dated December 3d 1847, to his father, about selling the timber separately, as evidence of the construction of the written power, or a recognition of a subsequent or parol power to the son to sell the timber.

" All these facts, circumstances and inferences make the question such a mixed one that we refer it to you for solution instead of deciding it as a matter of law.

" This is the main and principal question in the cause and must be determined from the evidence alluded to.

" In considering them you may take into consideration the probabilities arising from the relationship of the parties, the dependence of the son on the father, and the fact that the parties, father and son, were living near neighbors to each other, in the same city, while this alleged spoliation of the timber was going on, in friendly intercourse.

" The plaintiffs have asked us to charge you that the power of attorney given by the elder Coxe to his son, dated January 13th 1847, does not contain authority to sever and sell the timber from the land.   We agree to this construction of that instrument and answer their 3d point in the affirmative.   Yet the parties had power so to construe it, and if they did mutually agree that it should be so understood and construed they would be bound by their own interpretation, and not permitted to gainsay it to the prejudice of rights that had been acquired by others in pursuance of such construction. * * *

" We do not agree with the plaintiffs' fifth point, and have already given our views on the subject of which it treats.   With the other evidence in the case pointing to the existence of such a license or power, as the letter spoken of by Mrs. Coxe is alleged to have contained, we submit the question of its existence and contents to you.

" We decline to charge as requested in the seventh point.

" From the view we have taken of the evidence in this case, it does not become very material whether the defendants had a written contract with J. R. Coxe, Jr., or not.   The plaintiffs say there is no sufficient proof of such a contract.   We have acquiesced in this as a legal proposition.   But we say further, a written contract is not absolutely necessary to their defence.   And this brings us to consider the legal position presented to us by the defendants' counsel.

" We affirm the defendants' point, with this exception and explanation, that you are to take into consideration all the evidence in the cause in seeking for the conclusion as to the authority to sell.

[Coxe v. England.]

"We have already said that the written regular power to J. R. Coxe, Jr., from his father to sell the land, did not authorize the severance and separate sale of the timber unless the parties to it mutually agreed it should be so construed, and acted upon that construction in their transactions with the defendants. Of this there is no direct evidence. If they did so understand, and act upon the power referred to, it is only disclosed inferentially by their subsequent conduct.

"But we do say to you, that if the elder Coxe, owning both land and timber, made a gift of the latter to his son, or gave to him the authority or license to take or sell the timber and appropriate the proceeds to his own use and the maintenance of his family by parol or by letter, and he did so, and in the execution of that gift or permission, he sold the timber to the defendants, and they took the timber without any revocation of the grant or license, or notice to them to quit, he, J. R. Coxe, Sr., could not afterwards sue the parties in tort for taking it, neither could his executors after his death. If such be the fact, then the plaintiffs are not entitled to recover. Such a position would encourage bad faith and suffer a party to implicate another in a trespass by the denial or revocation of his own contract. But of this fact you must be satisfied from the evidence, and the evidence bearing upon that point I have already alluded to.

"While the law would not hold the father bound by a parol contract to sell the land even to his son, it will not permit him to sue his son in trespass for entering the land upon such a parol sale, or parol license, less than a sale.

"If the son had a parol permission to cut and appropriate the timber, he could transfer that right, and do the same by another which he was empowered to do himself.

"The logical result is, therefore, if the timber in dispute was cut and taken off with the consent of the owner, J. R. Coxe, Sr., and the proceeds went to the purpose he designated and had appropriated them, although he might have rescinded or countermanded the license at any time before it was fully executed, he cannot afterwards treat those who acted under it, as trespassers.

"This is an action of trespass, and if such was his permission and authority at the time, he nor his executors cannot repudiate it and recover now. A man cannot tell his neighbor that he may cut and have such a tree on his land at a fixed price, and after he has taken and paid him for it, sue him in trespass for wrongfully entering his close and committing waste."

The verdict was for the defendants.

The plaintiffs took a writ of error, and assigned 15 errors.

1. Rejecting their offer of evidence as to the value of timber at Williamsport.

2. Admitting the offer in the 2d bill of exceptions.

[Coxe v. England.]

3. Admitting the testimony of Grier.

14. Admitting the deposition of Mary J. Coxe.

4 and 5. The answers to the plaintiffs' 5th and 7th points.

13. The answer to the defendants' point.

7. That part of the charge included in brackets.

6, 8, 12, 15. Other portions of the charge.

*H. Souther* and *R. Brown*, for plaintiffs in error.—Evidence as to the value of timber at Williamsport was proper : Hazleton Coal Co. *v.* Buck·Mountain Coal Co., 7 P. F. Smith 301. Mrs. Coxe could not give the whole of the letter; the whole of a party's statement must be given : 1 Starkie on Ev. 359 ; Carver *v.* Tracy, 3 Johns. R. 427 ; Fenner *v.* Lewis, 10 Id. 38 ; Wailing *v.* Toll, 9 Id. 141 ; Whitwell *v.* Wyer, 11 Mass. R. 6. Parol declarations of the owner of land are not admissible to defeat his title : Barnard *v.* Pope, 14 Mass. R. 434. A witness must speak clearly of the contents of a lost paper : U. States *v.* Button, 2 Mason R. 468 ; Taylor *v.* Riggs, 1 Peters' R. 600 ; Renner *v.* Bank of Columbia, 9 Wheat. 581. There was no proof that Mrs. Coxe knew the handwriting of her father-in-law : Slaymaker *v.* Wilson, 1 Penna. R. 219 ; Porter *v.* Wilson, 1 Harris 641. Her statements were hearsay : 1 Phillips on Ev. 165 ; 1 Greenl. Ev., § 124. There was no delivery to the son; this is essential to a gift : 1 Pars. on Contr. 234. A license is not assignable : 3 Kent's Com. 452 ; Jackson *v.* Babcock, 4 Johns. 418. Parties standing in the relation of parent and child, &c., are held to stricter proof of their dealing than strangers : Bash *v.* Bash, 9 Barr 260 ; Lantz *v.* Fry, 2 Harris 201 ; Sanders *v.* Wagonseller, 7 Id. 248 ; McCue *v.* Johnston, 1 Casey 308 ; Hugus *v.* Walker, 2 Jones 173 ; Poorman *v.* Kilgore, 2 Casey 365.

*H. C. Parsons* and *Armstrong & Linn*, for defendants in error. —It is not trespass to cut timber under a parol license : Pierrepont *v.* Barnard, 2 Seld. 279 ; Nettleton *v.* Sikes, 8 Metc. 34 ; Whitemeash *v.* Walker, 1 Id. 313 ; Claflin *v.* Carpenter, Id. 580 ; Liggins *v.* Inge, 7 Bing. 682 ; Tayler *v.* Waters, 7 Taunt. 374 ; Lyron *v.* Blakeman, 22 Barb. 536 ; Rerick *v.* Kern, 14 S. & R. 267 ; Swartz *v.* Swartz, 4 Barr 353 ; Ebner *v.* Stichter, 7 Harris 19 ; Huff *v.* McCauley, 3 P. F. Smith 206.

The opinion of the court was delivered, May 5th 1870, by

AGNEW J.—This was an action of trespass for cutting standing timber. Its value was therefore to be ascertained by the price of such timber in the vicinity, and not by the net value of the logs cut from it, in a distant market. The evidence shows that the timber had a price where it stood, the value of stumpage, as it is termed, being proved by numerous witnesses. It was not a case

[Coxe *v.* England.]

of necessity, where the distant market was really the only market, as in the case of The Hazelton Company *v.* Buck Mountain Company, 7 P. F. Smith 301. We cannot say there was error in the first bill of exceptions.

There was error in the admission of portions of the offer contained in the second bill of exceptions. The purpose expressed was to show a sale of the timber by John Redman Coxe, Jr., to E. B. England, and also his authority to make the sale. This being a suit by the executors of John Redman Coxe, the elder, for a trespass in cutting the timber, the authority to be proved meant his authority to his son and the sale by his son, his sale as the principal. The means offered of proving the fact of a sale by the younger Coxe to England, was a written and sealed agreement dated February 17th 1863, signed by L. Lewis Coxe, a son of the younger John Redman Coxe, as attorney in fact of his father. But there was no competent proof that a power of attorney existed. None was produced or proved by any one who knew it to be an authentic document. John G. Hall merely testified that he thought L. L. Coxe had a paper which was a power of attorney from his father to act in the matter. On his cross-examination, he said he knew L. L. Coxe had a power of attorney, but could not say certainly it was present there, nor that he had seen it since, and did not know the handwriting to the power of attorney L. L. Coxe had. He does not undertake to state its contents at all. It is very evident therefore that there was no proof of any authority to execute the agreement of the 17th February 1863. This left that agreement without support, and being inadmissible in evidence, its recital of the contract of 16th October 1858 was also inadmissible as proof of the former agreement. Another objection to the agreement, so far as it was to be used to affect the plaintiffs, is that the power of attorney from the elder to the younger John Redman Coxe, did not authorize substitution of an attorney under him.

Another portion of the offer in the second bill of exceptions is a deposition of Mrs. Mary J. Coxe, the widow of John Redman Coxe, Jr. It was offered to show authority, by a letter, from the elder to the younger John R. Coxe to make sale of the timber. It was inadmissible for this purpose on several grounds. Mrs. Coxe does not testify to any real knowledge of her own of the contents of the letter. What she knows of that part of the letter testified to is evidently what she heard her husband read aloud, and not what she saw. She says she looked over her husband's shoulder for an *instant* as he was reading. She remembers the letter beginning, "My Dear John," but beyond this she can only remember seeing that the words were what her husband was reading aloud. She cannot say that she remembered any sentences of the letter word for word, as they were written *or* read aloud. Her

[Coxe v. England.]

account evidently shows a hasty glance only at the letter, while the true source of her recollection was the utterance of her husband. Such an instant sight leaves conviction in the mind that her knowledge was hearsay, and not competent proof of the contents of the letter. In addition to this she does not profess to give the whole contents, and does not even state that this portion of the letter was all that related to the subject of the timber. On this point her testimony falls far short of the evidence of the contents offered in Dennis v. Barber, 6 S. & R. 420; a case which rules this in respect to the proof of contents.

We cannot say there was error in receiving the offer contained in the third bill. The testimony of John Grier of the declarations made by the elder John R. Coxe, was admissible. Its effect would depend on other portions of the case to be viewed in connection with it.

It seems to us that the language of the judge set forth in the 7th assignment of error was but a statement of the effect attributed by the defendants to the agreement to sell timber to R. M. Stevenson. If his own inference it would be incorrect. That agreement was never finished and was found with the endorsement upon it—"not executed." It could not be inferred from such an incomplete writing found among his papers that the elder Coxe recognised his son's authority to sell the timber.

It is unnecessary to examine in detail the assignments of error as to the effect of a parol gift of the timber by the elder to the younger Coxe, or the effect of a mere license to cut the timber and use its proceeds. The result of the whole instruction was that if the elder Coxe authorized the younger Coxe to sell the timber and receive the proceeds to his own use, and the timber was actually cut and taken under this authority by the defendants, without a notice to desist or of revocation of the authority, the defendants cannot be treated as trespassers by the executors as plaintiffs in this action. We cannot say this was an error. If the question arose on the sale itself, involving a right of specific performance, or the rights of third parties, the case might be different as we held in Pattison's Appeal, 11 P. F. Smith 294, from Tioga county at last term, and the timber would be considered a part of the realty. But when the question is, as here, whether the cutting of the timber was a trespass or not, it would be harsh law that would treat as a trespasser one who had entered and cut the timber by authority of the owner, because his permission was not in writing. These remarks cover the merits of the fifteen assignments of error, and the judgment is therefore reversed and a *venire facias de novo* awarded.