DeRosa *v.* Equitable Life Assurance Society of United States, Appellant.

Argued May 6, 1943. Before KELLER, P. J., BALD-
RIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and
RENO, JJ.

*Karl W. Warmcastle,* with him *F. J. Hartmann,* for
appellant.

*Bruce A. Sciotto,* for appellee.

OPINION BY HIRT, J., July 16, 1943.:

Plaintiff, husband of the insured, is the beneficiary
of a policy issued by defendant. Payment was con-
tested on the ground of alleged false and fraudulent
representations material to the risk, in the application
for the insurance attached to the policy. The jury
found for plaintiff for the amount of the policy and
judgment was entered on the verdict. The errors as-
signed go to the refusal of judgment n.o.v. and a new
trial.

Pearl M. DeRosa was first insured by defendant in
a life policy issued in 1928. Under a rule of the com-
pany, because she then submitted to a physical exami-
nation, she was entitled to receive the policy in ques-
tion, if the answers to questions in her application were
favorable, without further medical examination at the
option of the defendant. The application was made to
an agent of defendant by her husband on October 29,
1935, and the answers to questions in the application
were written by the agent from his record of the first
policy and from information furnished by the plaintiff.

It was later signed by the insured and returned to the defendant's agent. There was nothing to prevent the agent from securing the answers from insured in person; the negotiations for the policy were conducted by her husband as a matter of convenience. In the application the insured agreed that her "answers are true, and are offered to the Society as an inducement to issue the policy" and "that the Society shall have the right in its discretion to require a medical examination for the purpose of determining my insurability." The defendant might have, but did not, exercise this right. The policy provided: "All statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties ......"

In her answers as they appear in the application, insured stated that she had a surgical operation for appendicitis in 1929 at Lee Hospital. To the question as to the name of every physician consulted or by whom insured had been treated "during the *past five years*" the answer is "Dr. Geo. Wright, 224 Main St., Johnstown, Pa. Operation appendicitis. Complete recovery." The answers to other questions represent that insured had never been treated for "rundown condition" or for "any other illness or injury not mentioned above." Appendicitis was the only illness mentioned. In a supplemental history insured represented that she had no "menstrual disorder or symptoms of disease of ...... female organs."

The anwers of insured in the application do not check squarely with the facts. The appendectomy in 1929 was not performed by Dr. Wright but by Dr. L. W. Hornick and was incidental to the removal of a Fallopian tube and a benign ovarian cyst. Dr. Wright however was the only physician consulted within five years of the date of the application. She was treated by him in a hospital for six days beginning May 25, 1934, for inter-menstrual bleeding. Dr. Wright saw her again in September 1935 and found a fibroid condition of the

uterus and she was informed of that fact. He referred her to Dr. H. M. Stewart for x-ray treatment. Seven treatments were administered to arrest the vaginal bleeding. Though Dr. Stewart gave the x-ray treatments he considered her Dr. Wright's patient. Dr. Wright next saw her on March 1, 1936, and then for the first time found "an ulcerating condition of the posterior wall of the cervix." She died of carcinoma of the cervix of the uterus on February 23, 1937.

In the light of the verdict the inaccuracies in the application must be regarded as innocent and without the intent to deceive. Insured's actual physical condition was known to Dr. Wright, and plaintiff, before receiving the application to be signed by his wife, suggested to Conrad, defendant's agent, that he discuss the question of her health with him. It is admitted that he did inquire of Dr. Wright whether there was any serious ailment and that Dr. Wright said: "there was nothing detrimental." The insurance Company in the application had the name of the physician who knew all about the physical condition of the insured. If he had been consulted by an investigator, in addition to Conrad the soliciting agent, no evidence of serious ailment affecting insurability would have been developed. It is a fact of importance that the testimony established the total absence of carcinoma prior to the application; its inception and development came after the policy was delivered. Dr. Wright and the other medical witnesses were called by defendant and this insurer is bound by their answers. Their testimony is all to the effect that a fibroid condition of the uterus is a benign ailment common in women of insured's age and ordinarily does not affect insurability. The testimony is that this condition did not develop into the carcinoma which resulted in death. In addition, going to the question of good faith, after the policy was issued, plaintiff, having discovered inaccuracies in the application, informed defendant's agent that it was Dr.

Hornick who performed the appendectomy in 1929 at Mercy Hospital and not at Lee Hospital and that a "water tumor" also was removed. It is conceded that the tumor was benign and did not affect insurability after a complete recovery.

Inaccuracies in the answers in the application were material to the risk and the application should have reported the x-ray treatments by Dr. Stewart. *Cf. Lyttle v. Pacific Mut. Life Ins. Co.*, (Ohio) 72 F. 2d 140; *Anderson v. Aetna Life Ins. Co.*, 265 N. Y. 376, 193 N. E. 181, but see *Adams v. Metropolitan L. Ins. Co.*, 322 Pa. 564, 186 A. 144. It must be borne in mind however that the written answers were not warranties (as in *Roney v. Clearfield Co. Grange Ins. Co.*, 332 Pa. 447, 3 A. 2d 365 and *Rinker v. Aetna Life Ins. Co.*, 214 Pa. 608, 64 A. 82) and the defense does not rest upon sound health as a condition precedent to the validity of the policy. *Cf. Prudential Ins. Co. v. Kudoba*, 323 Pa. 30, 186 A. 793. The distinction between representations and warranties is fundamental in this class of cases. In this State where the covenant is that the statements of the insured shall be deemed representations and not warranties, the inquiry is not limited to the single question of the *materiality* of the answers. If every false answer material to the risk will void the policy a distinction between a representation and a warranty or a condition precedent does not exist. This certainly is not the law. Though the cases are not all in harmony, yet as indicated in *Suravitz v. Prudential Ins. Co.*, 244 Pa. 582, 91 A. 495, "a fair reading of them will show a tendency to broaden the scope of inquiry into questions relating to materiality, correctness and truthfulness of answers, *and the good faith of the applicant* in making them ......" (Italics added.) The principle of the Suravitz case was restated in *Evans v. Penn Mutual L. Ins. Co.*, 322 Pa. 547, 186 A. 133, thus: "Where the statements are made representations, the

test of recovery is the good faith of the insured in making them." Not every false answer in an application for insurance can be explained away by an assertion of good faith carrying the case to the jury. "But where the misstatement has been set forth inadvertently, or the narrative is incomplete in detail, and was made without intention of concealing the truth, a recovery is permissible, the question of good faith being for the jury": *Livingood v. New York Life Ins. Co.*, 287 Pa. 128, 134 A. 474. The inference of fraud in the instant case is not irresistible nor is it established by incontrovertible evidence, (*Evans v. Penn Mutual L. Ins. Co.*, supra; *Kasmer v. Metro. Life Ins. Co.*, 140 Pa. Superior Ct. 46, 12 A 2d 805) ; the question therefore was for the jury and defendant is not entitled to judgment n.o.v.

Defendant seeks a new trial assigning as error the following excerpt from the charge of the trial judge: "If, however, the agent for the defendant taking the application relies upon his own source of knowledge and answers certain matters, and has communicated to him things which should put him upon inquiry but neglects to further inquire, then that is all to be considered in determining whether there was in fact a fraud or misrepresentation so far as the answers are concerned." It is contended that this is the equivalent of saying that knowledge of the agent and information given him putting him on notice, are imputed to the defendant. The policy did not contain a provision to the effect that statements to the agent shall not be considered notice to the company. But the application did provide that "no agent [except an officer of the company] has power ...... to waive any of the Society's rights or requirements, and that no waiver shall be valid unless in writing and signed by one of the foregoing officers." "The general rule that notice to an agent, and knowledge obtained by him while acting within the scope of his authority, are notice to and knowledge of the

principal, it is agreed, applies to insurance companies and their agents respecting material facts affecting the risk": 2 Couch on Ins., §525. The conflict of opinion among the courts arises from the application of the rule where there are attempts of insurance companies by means of restrictions in their policies to withdraw from their agents the power to effect an oral waiver binding their principals. ibid, §522. In *Suravitz v. Prudential Ins. Co.,* supra, the policy contained a provision similar to that in the present contract and it was held that the insured was not bound by answers in the application as to other insurance which the agent knew to be untrue. See also *Evans v. Metropolitan Life Ins. Co.,* 294 Pa. 406, 144 A. 294. Generally, the rule imputing the agent's knowledge to the principal, though not intended as a shield for unfair dealing, may be invoked by those exercising good faith. *Mutual Life Ins. Co. v. Hilton-Green,* 241 U. S. 613. In this case defendant had the right to require a medical examination and it may not be assumed that the information given the defendant's agent outside of the application was not communicated to his principal. But whether or not the company is bound by the agent's knowledge in this case is not controlling; if the court erred, the error was harmless. What was said to the agent at the time of the application was merely to urge him to consult Dr. Wright who had full knowledge of insured's physicial condition and of the treatments by physicians. This information was readily available to the company since his name appeared in the application. All other information given to the agent related to treatment by a physician more than five years before the application. The charge of the court as a whole submitted the case to the jury on the broad issue of good faith and we find no reversible error in it.

Judgment affirmed.