## Commonwealth *v.* Steadman, Appellant.

Argued October 23, 1944. Before KELLER, P. J., BALDRIGE, RHODES, HIRT, RENO and JAMES, JJ.

*Frank D. Prather*, with him *Peters & Prather*, for appellant.

*Kenneth W. Rice*, District Attorney, for appellee.

OPINION BY RENO, J., December 13, 1944:

Appellant was convicted on two indictments charging statutory rape and bastardy. He admitted the rape but denied the paternity of the two children. On appeal, his only complaint is that he was not permitted to prove the contents of a letter allegedly written by the girl on or about May 21, 1943, after the birth of the

children, exonerating him from the charge of bastardy.

The girl, Geneva Kiley, is the niece of appellant's wife, and lived in appellant's home for approximately a year before the birth of her first child. This child was born when she was fourteen and a half years old, and the second child was born about a year later. Just before the second child was born appellant and the girl left appellant's home and sojourned at various places until he was arrested by the state police. While they were at the home of Robert Anderson, appellant claims, the girl wrote the exonerating letter.

Geneva Kiley testified that she did not remember writing the letter. Mrs. Steadman testified that she received an envelope containing two letters in Geneva's handwriting, one addressed to her requesting her to forward the other to Geneva's mother to whom it was addressed. The letter to the mother, it is contended, contained the statements exculpating appellant. She burned the letter addressed to her because "at that time I [she] didn't think it would mean anything." She testified that she forwarded the other letter by registered mail addressed to Geneva's parents and requested a return receipt. She did not produce the receipt, testifying: "I have the receipt at home." Her home was ten miles from the Court House and, although the trial adjourned over one night while the defense was being heard, she did not produce the receipt next day. The girl's mother testified that she received several registered letters from Mrs. Steadman, that she destroyed them, and she did not definitely acknowledge that any of the destroyed letters were from her daughter, or that she received the particular letter concerning which inquiry was made. The girl's father was called as a witness, but, although the letters were jointly addressed to him and his wife, and therefore it was possible that he may have received the letter in question, he was not questioned concerning it. Mrs. Madge

Eaton, a neighbor of appellant's, and Mrs. Anna Craig, a sister of appellant's wife, testified that Mrs. Steadman showed them the letter before she mailed it to the girl's mother, but they were not allowed to testify to its contents. Robert Anderson, at whose home the letter was allegedly written, testified that he saw the girl write the letter, read a part of it, and that later Kenneth McCoy, a state policeman, read the letter to him and to his wife. His wife was not called as a witness, and McCoy denied that he ever had possession of a letter from the girl and that he read one to Anderson. Anderson was not permitted to testify to its contents.

The trial judge was required to determine preliminarily whether the proof was sufficient to permit the introduction of secondary evidence of the contents of the letter. *Leazure v. Hillegas,* 7 S. & R. 313. This rule obliged him to satisfy himself that the letter was actually written and delivered, and subsequently destroyed, and whether the witnesses had accurate knowledge of the contents. Primarily, this involved his judgment upon the credibility of the witnesses. His conclusion is necessarily based, inter alia, upon the appearance and demeanor of living witnesses, and, because this court is confined to the inanimate type of the printed record, his decision upon that question will be accepted by us. *Hemphill v. McClimans,* 24 Pa. 367; *Ray's Est.,* 304 Pa. 421, 156 A. 64. The whole question is wisely committed to the discretion of the trial judge, and unless an appellate court is convinced that he has palpably abused his discretion, his action will not be disturbed upon appeal. *Gorgas v. Hertz,* 150 Pa. 538, 24 A. 756; *Muncey v. Pullman Taxi Service Co.,* 269 Pa. 97, 112 A. 30. If it is contended that a document has been destroyed, positive proof of its destruction must be presented. *Parks v. Dunkle,* 3 W. & S. 291. Witnesses are not required to testify to the

precise language of the document (*Daly's Est.*, 55 Pa. Superior Ct. 488), but they must be able to testify to its substance and possess knowledge of the whole contents. *Coxe v. England*, 65 Pa. 212; *Dennis v. Barber*, 6 S. & R. 420. If witnesses have not personally read the letter, they may not testify to its contents, for such testimony is hearsay. *Coxe v. England*, supra.

In this state of the proof, and mindful of the applicable principles of the law, the problem presented to the trial judge becomes clear. If it be conceded that the letter was actually written and mailed, and the proof of that was at least sketchy, there was no satisfactory proof of its delivery and destruction. The girl's mother did not admit that she received and destroyed the particular letter in question. It was addressed jointly to her and her husband, and the proof wholly failed to eliminate the possibility that the girl's father received it and still had it in his possession. The return registration receipt would have shown to whom it was delivered but Mrs. Steadman did not produce the receipt on either day of the trial. Since the receipt was at her home, according to her testimony, it was within defendant's power to produce positive evidence of the person to whom the letter was delivered and, if delivered to Mr. Kiley, to require him to testify to its receipt, to produce it, or to account for its nonproduction.

Mrs. Steadman was a wholly incredible witness. Apart from her emotional, and perhaps financial, interest in the outcome of the case, her testimony disclosed her playing two inconsistent roles. Appearing as a witness for her husband, she testified to circumstances from which the jury was expected to deduce that defendant had no intercourse with her niece, and was not the father of her progeny. Yet, according to the testimony of Herbert A. Mook, Esq., then the district attorney of Crawford County, Mrs. Steadman told him

soon after her husband's departure with the girl, that she had seen the girl and her husband together in her bedroom under circumstances that aroused her suspicion, and desired a warrant for rape. Her testimony concerning the destruction of the letter from the girl which might have cleared, or assisted in clearing, her husband, did not have the ring of truth. Her failure to retain the girl's letter because she did not think it meant anything was so inconsistent with her action in showing the letter to the girl's mother to her neighbor and sister that another serious doubt of her credibility was created. The problem before the court, as we view it, was largely confined to her testimonial qualifications, and we experience no difficulty in understanding the trial judge's reaction to her testimony.

Robert Anderson was not competent to testify for he himself had read only part of the letter. His knowledge of the whole letter was derived from hearing it read by the state policeman, and his testimony as to its contents so derived would have been hearsay, even if the incident had not been denied. Mrs. Eaton was not shown to have knowledge of the girl's handwriting; and Mrs. Craig, who, otherwise might have been competent, was undoubtedly excluded because, as the court said, "no sufficient evidence was offered to show that it [the letter] was lost or destroyed".

We have carefully studied the entire record, and it does not convince us that the court manifestly abused its discretion in refusing to receive secondary evidence of the contents of the alleged letter.

The judgment is affirmed and it is ordered that the defendant, if released on bail, appear in the court below at such time as he may be there called and that he be committed by that court until he has complied with his sentence or any part of it which had not been served at the time his appeal was made a supersedeas.