Pfautz *v.* Sterling Insurance Company, Appellant.

Argued October 8, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*John I. Hartman, Jr.,* with him *Windolph, Burkholder & Hartman,* for appellant.

*Mark R. Eaby, Jr.,* with him *David R. Eaby* and *Eaby & Eaby,* for appellee.

OPINION BY HIRT, J., November 12, 1957:

Claimant applied for and received a health and accident policy from the defendant in February 1953. No medical examination was required, but in her application for the policy she answered "none" to both of the following questions: "Have you received any . . . medical . . . advice or treatment or had any local or constitutional disease within the last five years?" and "Have you ever been treated for any female trouble." To the further question: "Are the menstrual functions now regular and normal?" she gave an affirmative answer, and in her application she also answered "yes" to the following: "Do you hereby apply to Sterling Insurance Company for this policy to be issued solely and entirely in reliance upon the written answers to the foregoing questions, which you agree are true and correct to the best of your knowledge and belief?"

Plaintiff was stricken ill on June 9, 1953, about four months after applying for the policy; the diagnosis was "cerebral hemorrhage as a result of hypertension." She has been totally disabled by resulting partial paralysis since that date and the medical testimony is that her disability will continue indefinitely. Proof of claim for benefits for total disability was filed on July 15, 1953. The defendant denied liability on the ground that the representations made by plaintiff in her application for the policy were false and that she was chargeable with bad faith in making them because she knew they were false. In this action brought by plaintiff to recover on the insurance contract, the jury resolved that issue in plaintiff's favor; the verdict for her in the sum of $2,600 reflects benefits of $100 per month under the policy to the date of suit. Defendant

in this appeal contends that the court erred in refusing to limit plaintiff's judgment to the amount of the premiums paid by her, because of her alleged fraud in applying for the policy.

Dr. Alleman, plaintiff's regular physician died on November 11, 1953, four months after she filed her proof of claim. At the trial, on cross-examination of the claimant by the defendant, on the subject of her visits to her doctor, she testified: ". . . if I needed something I went to Dr. Alleman, of course . . . Maybe twice or three times [a year], something like that. It wasn't very often, I know that." And further from her recollection, in response to the question whether she saw Dr. Alleman between February 19, 1948 and February 19, 1953, she said: ". . . I did occasionally—I went for heat —for menopause, injections for heat." In support of her contention that her application for the policy was made in good faith it was her position that she was not obliged to inform defendant of all of her visits to her doctor within the 5-year period because she was not seriously ill on any of the occasions of her visits. It is the law that the failure of an insured to report attendance or treatment by physicians does not alone constitute fraud, where the assured is not aware that he is suffering from or is being treated for a "grave, important or serious disease." *Adams v. Metropolitan L. Ins. Co.*, 322 Pa. 564, 186 A. 144. In that case it was said: "It is clear that, while such statements are material to the risk . . . the failure to report every attendance or treatment by a physician does not alone constitute fraud, as for instance where the application does not disclose attendance for headaches, grippe, acute colds, indigestion, or other comparatively minor illnesses" citing a number of cases in which the jury's verdict, in favor of the beneficiary, was upheld despite the nondisclosure. Again as said by the Supreme Court

in *Travellers Ins. Co. v. Heppenstall Co.*, 360 Pa. 433, 438, 61 A. 2d 809; "It has frequently been held that an applicant for insurance is not required to report illnesses or conditions which one would not ordinarily regard as of real gravity or importance." And in the present case plaintiff's failure to report treatment for menopause does not in itself convict her of bad faith. Menopause is a period of physical change with its attending discomforts and tensions through which every woman must pass.

The burden of proving plaintiff's bad faith in applying for the policy was on the insurer. *DeRosa v. Equitable Life Assur. Society*, 153 Pa. Superior Ct. 33, 33 A. 2d 495. In order to avoid a policy on the ground of fraudulent representations, the insurer must show not only that plaintiff's statements were false but that she knew they were false or that she otherwise acted in bad faith in making them. *Travellers Ins. Co. v. Heppenstall Co.*, supra; *Burton v. Pacific Mut. Life Ins. Co.*, 368 Pa. 613, 84 A. 2d 310. *Bailey v. Pacific Mut. L. Ins. Co.*, 336 Pa. 62, 66, 6 A. 2d 770, the principal case relied upon by appellant is readily distinguishable, in that there within the space of one year the insured had made no less than 13 visits to four out of town doctors who specialized in different fields of medicine. The court there approved what was said by the lower court as follows: " 'Such a series of consultations cannot be dismissed as would one physical examination or check-up, or as in the case of treatments for trivial or minor ailments by a physician in the locality of the person's own residence.' "

About a month *after* the death of Dr. Alleman an investigator employed by the defendant inspected the doctor's ledger which then was in the possession of Irene S. Herr. She had been in Dr. Alleman's employ for many years. She kept his office records and she

had made all of the entries in the ledger. The investigator, with her permission, tabulated the dates of the plaintiff's visits to the doctor as they appeared in the ledger and Miss Herr checked the copy for accuracy. Some time thereafter at the direction of the executor of the estate of Dr. Alleman this ledger and all of his other records were destroyed. On positive proof of the destruction of the original ledger, the trial judge did not abuse its discretion in admitting the tabulation made by the investigator as secondary evidence of the number and dates of plaintiff's visits to Dr. Alleman. *Commonwealth v. Steadman*, 156 Pa. Superior Ct. 312, 40 A. 2d 96; Henry on Evidence, §288, et seq. The exhibit showed two visits in 1949, nine visits in 1950, six visits in 1951, seven visits in 1952 and three visits in 1953. No evidence was produced at the trial of this case other than plaintiff's testimony above referred to, as to the nature of her visits. Miss Herr remembered that plaintiff had consulted Dr. Alleman but without the doctor's records, which had been destroyed, she was unable to state the reasons for plaintiff's visits.

The question of fraud in this case was for the jury and not for the court, as a matter of law. ". . . where it is established by uncontradicted documentary evidence that the insured has consulted physicians so frequently, or undergone medical or surgical treatment so recently, or of such a serious nature, that a person of ordinary intelligence could not have forgotten these incidents in answering a direct and pointed question in an application for insurance, bad faith may be inferred as a matter of law if the insured denies in his answer that any physician has been consulted, or medical or surgical treatment has been received during the period of inquiry": *Freedman v. Mut. Life Ins. Co. of N. Y.*, 342 Pa. 404, 21 A. 2d 81. But where the controlling issues of fact are presented by conflicting evi-

dence whether documentary or oral the case is for the jury subject to the power of the court in its discretion to grant a new trial in the interest of justice. *Evans v. Penn Mutual L. Ins. Co.,* 322 Pa. 547, 186 A. 133. Defendant did not apply for a new trial in this case and the verdict is supported by the credible evidence when viewed in the light most favorable to the plaintiff.

We may refer to the weakness of defendant's proofs, in attempting to prove bad faith, in two respects. Dr. Alleman did not die until about four months after plaintiff filed her proof of claim. Within that period defendant made no effort whatever, as far as this record discloses, to determine the nature of plaintiff's visits to his office. And it was not until after Dr. Alleman's death that the defendant on January 6, 1954 denied liability. More important still is the fact that defendant's investigator made a transcript from the ledger of only the dates of plaintiff's visits. Miss Herr's uncontradicted testimony is that the ledger contained "The name and address on the page, and each entry— an entry for each patient." And in response to the question put to her on direct examination: *"There would be entered on this* [ledger] *sheet an entry to indicate the purpose of the visit.* Is that correct?" Miss Herr answered: "That is right." It was a fair inference for the jury that the entries on the ledger stating the reasons for plaintiff's visits, since defendant's investigator did not make a transcript of them, were of illnesses which were not serious enough to convict plaintiff of bad faith in failing to give defendant notice of them. Accordingly, the question as to whether the numerous unreported visits of plaintiff to her doctor convicted her of bad faith was properly for the jury.

Judgment affirmed.