## Suravitz, Appellant, v. Prudential Insurance Company.

*Insurance—Life insurance—Applications—Answers to questions —Representations — Warranties — Untrue answers — Effect — Agents—Limitation of liability for act of agent—Duty to disclose latent diseases—Good faith—Case for jury.*

1. While an applicant for insurance who warrants his answers to be true, is bound not only to make his answers good, but also to see that they are properly written down, and to know what those answers are, an applicant whose statements under the provisions of the application are to be deemed representations, not warranties, and who, in good faith, takes out a policy of insurance, is relieved from the harshness of the rule applicable to warranties.

2. In an action upon a life insurance policy where it appears that the application which the insured signed contains a stipulation that the answers to the questions are to be deemed representations and not warranties, not only the materiality of an answer alleged by the defendant to be false, may be questioned, but also the accuracy and good faith of the agent in writing down the answers, if the application was signed in good faith without having been read, or if the applicant signed without knowledge of the fact that they had been incorrectly written down by the agent.

3. A covenant in an application for life insurance that the agent cannot bind the company by "making or receiving any representation or information," will not protect the insurance company from liability on the policy, where the agent has negligently or fraudulently written untrue answers to questions in the application, different from the answers given him by the applicant.

4. While an applicant for insurance is bound to exercise good faith in disclosing such facts about the condition of his health as are known to him, and such as he honestly believes to be true, he is not bound to know of the existence of a latent disease, concerning which from the nature of things he could have no exact information.

5. Whether an applicant who states that to the best of her knowledge and belief she is in good health, when in fact she is suffering from a latent disease, acts in good faith and honestly

believes that her health is good, or whether she wilfully makes a false statement, is for the jury.

6. Where an applicant for insurance is a foreigner who does not understand the English language, and cannot read the policy, or the application, a greater burden rests upon the insurer to deal fairly with the insured particularly as to the acts of the agent in soliciting the insurance and writing down the answers.

7. Where in an action of assumpsit on a life insurance policy, it appeared that the insured, who was a foreigner, ignorant of the English language, signed an application containing answers which were written in by defendant's agent, which contained a false statement as to the condition of the applicant's health, but it appeared that the disease from which the insured was suffering was of such a nature that she might have been ignorant of its existence, and there was evidence tending to show that the answers written in the application were not the answers made to the agent, it was for the jury to determine whether plaintiff replied in good faith to the questions put by the agent, and whether the agent correctly wrote plaintiff's answers to the questions in the application, and the jury having found a verdict for defendant under erroneous instructions, a judgment thereon was reversed with a new venire.

Argued Feb. 23, 1914. Appeal, No. 200, Jan. T., 1913, by plaintiff, from judgment of C. P. Lackawanna Co., Oct. T., 1910, No. 505, on verdict for defendant in case of Jacob Suravitz v. The Prudential Insurance Company of America. Before FELL, C. J., BROWN, MESTREZAT, ELKIN and STEWART, JJ. Reversed.

Assumpsit on a life insurance policy. Before O'NEIL, J.

The opinion of the Supreme Court states the facts.

Verdict for defendant and judgment thereon. Plaintiff appealed.

*Errors assigned* were answers to points and various instructions to the jury.

*C. P. O'Malley,* of *Warren, Knapp, O'Malley & Hill,* with him, *Peter L. Walsh,* for appellant.

*A. A. Vosburg,* for appellee.

OPINION BY MR. JUSTICE ELKIN, March 30, 1914:

This is an action on an insurance policy which by its terms made all statements of the insured representations and not warranties. The defense is that the answers contained in the application as to the good health of the applicant for insurance, and whether she ever had any serious illness or disease, were untrue in fact when made, and that the false answers being material to the risk, avoid the policy. Appellant denies that any intentional misrepresentation was made by the applicant to the agent of the insurance company who wrote down the answers in the presence of the husband and daughter of the insured; and at the trial, it was urged that the answers were made in good faith without any intention to evade, suppress or conceal facts which should be disclosed, and that the alleged false answers relied on to avoid the policy were incorrectly written down by the agent who solicited the insurance. It is conceded on all sides that the case was for the jury, and our only concern is to see that it was submitted with instructions properly defining the legal rights of the parties.

At the outset we are confronted with the question, Is an applicant for insurance so absolutely bound by the answers set forth in the copy of the application attached to the policy as to preclude an inquiry into their correctness, even on the grounds of fraud, accident or mistake? As to warranties, the decisions in our own State and elsewhere have gone very far towards closing the door to inquiries of this character upon the theory that when one desiring to take out insurance warrants his answers to be true, he is bound not only to make his answers good, but to see that they are properly written down, and to know what those answers are. This doctrine as applied to warranties has been so repeatedly asserted in our Pennsylvania cases that it is now too late to question the wisdom or soundness of the general rule, although exceptions have been made in some instances. In support of the general rule the following cases may

be cited: Cooper v. Fire Ins. Co., 50 Pa. 299; United Brethren Mutual Aid Society v. O'Hara, 120 Pa. 256; Mengel v. Insurance Co., 176 Pa. 280; Wall v. Society of Good Fellows, 179 Pa. 355; Dinan v. Benefit Association, 201 Pa. 363; Murphy v. Insurance Co., 205 Pa. 444; Rinker v. Life Ins. Co., 214 Pa. 608.

As to representations, the rule is not so unbending, and according to our view the distinction should be broadened rather than narrowed. It is argued that the only difference between a warranty and a representation is that under the former the materiality of the answer is not a defense, while under the latter it may be. This general distinction is recognized in all jurisdictions, and learned writers on the subject frequently advert to it, but we are not prepared to say, even in the light of the authorities, that this is the only distinction which can be properly made. If under a representation the materiality or immateriality of the answer may be inquired into, in a suit upon the policy, it is difficult to see why other pertinent questions may not be raised, when it appears that a mistake was made in recording the answer, or that fraud was practiced upon the applicant, or that the agent who solicited the insurance misinformed or misled the insured. Upon what line of correct reasoning, or by what fair rule of interpreting the covenants of contracting parties, can it be said that the materiality of an answer may be the subject of inquiry in a suit upon an insurance policy, but that no such inquiry can be made as to whether the answer itself was properly written down by the agent, or that a mistake was made in the preparation of the application which formed the basis of the contract? The parties themselves did not limit the inquiry to the question of materiality, but simply provided that the statement made by the applicant shall be deemed representations and not warranties. What purpose had the contracting parties in mind when they wrote into their covenant that such statements would be deemed representations only? Was

this a mere subterfuge, a change in terms without a change in meaning, or was the change intended to serve a more definite purpose by affording relief to those applicants who in good faith answered the interrogatories asked them by the agent of the insurance company who negligently, intentionally or fraudulently wrote down the answers incorrectly? In our opinion the change in the covenant from a warranty to a representation was intended to broaden the scope of inquiry in such cases so as to give relief to parties who in good faith take out policies of insurance, from the harshness, and in many instances the injustice, of the old rule applicable to warranties. If this be the correct view, and it is certainly the just and equitable one, we can see no reason for limiting the inquiry to the single question of the materiality of the answer. Whether true answers were made and whether the answers as made were correctly written down by the agent of the insurance company, and the good faith of the party making the answers to the best of his knowledge and belief, are questions which go to the very essence of the insurance risk, and parties should not be denied the right to have such matters determined before a proper tribunal unless they have covenanted otherwise. As to warranties the general rule is that the insured is concluded by his answer as it appears in the application attached to the policy, but as to representations no Pennsylvania case has gone so far as to hold that the same drastic rule should be applied and no case has decided that the inquiry is limited to the single instance where the materiality of the answer is raised by the issue. Indeed the opposite view has been held in several cases: Columbia Insurance Co. v. Cooper, 50 Pa. 331; Smith v. Fire Ins. Co., 89 Pa. 287; Eilenberger v. Insurance Co., 89 Pa. 464; Susquehanna Mut. Fire Insurance Co. v. Cusick, 109 Pa. 157; Kister v. Insurance Co., 128 Pa. 553; Meyers v. Mutual Ins. Co., 156 Pa. 420; Dowling v. Insurance Co., 168 Pa. 234; Mullen v. Insurance Co., 182 Pa. 150. In some of the

cases cited the covenant was that of warranty, but even in those cases this court held that where the agent of an insurance company omits a material portion of an answer of the applicant, or incorrectly writes down the answer as made, either intentionally or negligently, in a suit upon the policy the applicant may show by parol what the real answer was, if the application was signed in good faith without having been read, or if the applicant signed without knowledge of the fact that the answer had been incorrectly written down by the agent. These cases were put upon the ground that the fraud or mistake of an insurance agent acting within the scope of his authority will not enable his principal to avoid the policy to the injury of the insured who acted in good faith. It will thus be seen that this court in exceptional cases, even under the old rule, where the equities were strongly with the insured, refused to be bound by the doctrine generally applicable to warranties. If exceptions were made even under covenants of warranty, surely a more equitable rule should prevail when the parties write into their contract that all statements made by the insured shall be deemed representations. The cases are not in entire harmony, but a fair reading of them will show a tendency to broaden the scope of inquiry into questions relating to the materiality, correctness and truthfulness of answers, and the good faith of the applicant in making them, when suit is brought upon a policy containing a covenant that the statements of the insured shall be deemed representations and not warranties.

It is argued, and with much force, that this doctrine has no application to a case in which the policy of insurance limits the power of the agent, and Rinker v. Insurance Co., 214 Pa. 608, is relied on to sustain this position. We cannot agree that the case just cited is authority for the rule so broadly stated. In that case the policy contained a covenant of warranty, and therefore the question as to what rule should be applied to representa-

tions did not arise. This distinction is fundamental and should be kept in mind in this class of cases. Then, again, the limitation of the power of the agent in that case was very different from that appearing in the case at bar. In the present case the limitation of the power of the agent is in the following language: "No agent has power in behalf of the company to make or modify this or any other contract of insurance, to extend the time for paying a premium, to waive any forfeiture, or to bind the company by making any promise, or making or receiving any representation or information." There was nothing in this covenant to put the insured on notice that she would be absolutely bound by the answers incorrectly written down by the agent, or that she would be concluded by the answers thus incorrectly recorded so that no inquiry could be subsequently made as to what the true answers were. The covenant that the agent could not bind the company by "making or receiving any representation or information," falls far short of protecting the principal from the negligence or fraud of the agent in preparing the application. The contention here is that the agent either negligently or intentionally wrote down the answers incorrectly, not that he had received any false representation or information to induce the insurance. In several of the cases hereinbefore cited it was expressly held that the negligence or fraud of the agent could be inquired into in a suit upon the policy, and we can see no reason why this rule should not apply to the present case.

There is another question which demands consideration. Is an applicant for life insurance bound to know at his peril that he is suffering from a latent organic disease, so that his policy will be avoided if a representation that he is in good health, afterwards turns out to be untrue in fact, although made in good faith at the time of signing the application? In a general way it may be said that good health means apparent good health, without any ostensible, or known, or felt symptom or dis-

order, and does not necessarily exclude the existence of latent unknown diseases on the part of the applicant: May on Insurance, Section 295. As to this question there is a distinction between covenants of warranty and of representation. This court held in United Brethren Mutual Aid Society v. Kinter, 12 W. N. C. 76, that where there was no warranty on the part of the insured as to his freedom from diseases except those mentioned in the application, and there being no evidence that the insured had knowingly and wilfully misrepresented the condition of his health, the plaintiff was entitled to recover. That case was put upon the ground that the applicant is bound to exercise good faith in disclosing such facts about the condition of his health as are known to him, and which he honestly believes to be true, and that he is not bound to know at his peril of the existence of a disease which experience teaches may exist in latent form and concerning which one may not in the very nature of things have exact knowledge. To the same general effect see Mouler v. American Life Ins. Co., 111 U. S. 335; Grattan v. Insurance Co., 92 N. Y. 274; Ferguson v. Insurance Co., 102 N. Y. 647. In Washington Life Ins. Co. v. Schaible, 1 W. N. C. 369, the court below held that the validity of the policy depended upon the good faith of the insured in making representations in regard to her health. The jury were instructed that if the applicant answered the questions honestly, and did not wilfully or fraudulently suppress facts known to her, the policy would not be avoided although at the time of making the representations she may have had an organic disease in latent form unknown to her. The judgment in favor of the plaintiff was affirmed by this court. The same view was expressed by Mr. Justice GREEN in March v. Life Ins. Co., 186 Pa. 629-645, in the following language: "We are not prepared to sustain the twelfth assignment, as the deceased might have been afflicted with an entirely occult ailment altogether unknown to her, and in that event her failure to communicate it to

the defendant would not be a fraud upon the company."
Under the authority of these cases it was for the jury to
say whether the deceased acted in good faith and hon-
estly answered that she was in good health at the time
of making the application for insurance. Did she know
that she was afflicted with organic heart trouble, or had
she been advised that she was suffering from such dis-
ease; if so, her answers as to the condition of her health
were false and the policy would be avoided if the jury so
found. On the other hand, if she did not know of her
own knowledge, or from the symptoms which manifest
themselves in diseases of the heart, or from consulting a
physician, that she was suffering from latent organic
heart trouble, and honestly answered that she was in
good health, it was for the jury to pass upon all the
facts relating to this branch of the case and to determine
whether the applicant was in good health to the best of
her knowledge and belief when she answered the ques-
tion. In this connection it should be observed that the
application signed by the insured contained the declara-
tion "that all the statements and answers to the above
questions are complete and true to the best of my knowl-
edge and belief." In other words the covenant was that
the statements made by the applicant shall be deemed
representations, and the answers were to be tested by the
knowledge and belief of the party making them. In such
a case the question of good faith is necessarily involved
in the inquiry, and if there be a conflict in the testimony
it is for the jury to determine the fact.

We need but advert to one more question in the gen-
eral discussion. The deceased was a Hungarian with a
very imperfect knowledge of the English language. At
the time of making her answers she spoke through an
interpreter and there is no evidence that she either did
or could read the policy or the application. In such a
case a greater burden rests upon the insurer to deal
fairly with the insured. This is especially true as to the
acts of the agent in soliciting the insurance and writing

down the answers: La Marche v. Life Ins. Co., 126 Cal. 498; Phœnix Insurance Co. v. Golden, 121 Ind. 524; State Insurance Co. v. Jordon, 29 Neb. 514; Hayes v. Insurance Co., 81 N. Y. App. Div. 287. In the present case the husband and daughter were present when the answers were made and both testify that the answers written in the application were not the answers made to the agent who wrote them down. In addition there is the report of the medical examiner which corroborates the testimony of these witnesses, and this report was in the hands of the insurance company which was affected with notice of what it contained. Undoubtedly the plaintiff had the right to introduce this report in evidence for the purpose of showing what answers the insured made to the medical examiner and to corroborate the testimony of the witnesses who were present when the application was signed.

Under the facts of the present case we sustain the first, second, third, fourth, fifth, sixth, seventh, eighth, ninth, eleventh and twelfth assignments of error. The tenth assignment is not sustained although when the case is again tried all points of this character should be so framed as to meet the views herein expressed. The same may be said of the thirteenth assignment, which in some of its parts may not be in entire harmony with the views set forth in this opinion.

This is clearly a case for the jury and we have discussed the questions involved at some length in order to indicate our views of the law as a guide to all those interested when the case is again tried.

Judgment reversed and a venire facias de novo awarded.