Gimbel, Appellant, *v.* Aetna Life Insurance Co.

Argued November 13, 1928.

Before HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ.

*Robert F. Jackson,* and with him *Harold B. Beitler,* for appellant.—The answers to the questions were not warranties, and did not overcome the presumption of good faith and avoid the policy where there was no evidence that the insured knew the answers were false: Mellosky v. Eureka Maryland Assurance Corp., 93 Pa. Superior Ct. 314; Suravitz v. Prudential Life Ins. Co., 244 Pa. 589; Skruch v. Metropolitan Life Ins. Co., 284 Pa. 299; Livingood v. New York Life Ins. Co., 287 Pa. 128; Hunter v. Pope, 289 Pa. 560; Dunbar v. Preston, 285 Pa. 502.

*Paul Reilly,* for appellee.—The representations as to his previous illnesses were peculiarly within the experience and knowledge of the insured. Their falsity was a direct misrepresentation which avoided the policy: Lutz v. Ins. Co., 186 Pa. 527; Murphy v. Ins. Co., 205 Pa. 444; Rigby v. Ins. Co., 240 Pa. 332; McEntee v. Ins. Co., 79 Pa. Superior Ct. 457; Furey v. Mut. Life Ins. Co., 49 Pa. Superior Ct. 592; Moncur v. Western Indemnity Co., 269 Pa. 213.

OPINION BY KELLER, J., December 13, 1928:

On September 16, 1925, defendant issued a life insurance policy to Edward Gimbel for $1,000, on his written application, without any medical examination.

The policy contained the following clause: "All statements made by the insured, shall, in the absence of fraud, be deemed representations and not warranties, and no statement shall avoid the policy or be used in defense to a claim under it unless it is contained in the written application herefor and unless a copy of such application is attached hereto when issued."

The application, copy of which was attached to the policy, contained a statement that the answers to the

questions therein were "complete and true;" and the following certificate signed by the insured: "I hereby certify that the above answers and statements are made by me, that they are correctly and fully reported, and that no material circumstance or information has been withheld or omitted concerning my past and present state of health and habits of life."

Among the questions in the application was an inquiry whether the applicant had ever had certain specified diseases, among them "Pleurisy," "Other Diseases of the Lungs," "Disease of the Heart," to all of which he answered, "No."

The ninth and tenth questions and answers were as follows: "9. What other illnesses or diseases have you suffered from?—Influenza, 1918. Fully recovered. Colds. 10. Which of the above has, during the last five years, incapacitated you for more than a week at a time, from carrying on your occupation?—None."

The insured died on December 21, 1925 of acute endocarditis of the mitral valve, a disease of the heart. The evidence of his physician was that he had attended the insured for mitral endocarditis for from one and a half to two years. He also testified: "He [the insured] knew of his heart condition ....... I presume that he did know of his condition." He did not say that he had told the insured that he was suffering from heart disease or that the latter knew of his condition on September 16, 1925, when he signed the application for insurance. The question of his knowledge of the diseased condition of his heart and his concealment of it from the company was left to the jury which decided against the company; and the court in banc refused to disturb the verdict on this point.

But it was also shown by undisputed evidence that, contrary to the insured's answers to questions nine and ten of the application, he had been incapacitated by illness or disease from carrying on his occupation

from May 4 to May 20, 1925, inclusive, and from June 1 to June 17, 1925, inclusive, during one of which periods (May 4 to May 20) he spent the whole time in the Lutheran Hospital suffering from pleuropneumonia and endocarditis.

Whether or not he knew the diseases from which he was suffering, both of which were in the list which he represented that he had never had, he certainly knew, and was bound to know, the falsity of his answers to the ninth and tenth questions in his application. Out of the six and a half weeks elapsing between May 4 and June 17, 1925,—only three months prior to his application for this insurance—, he had been incapacitated by illness or disease from carrying on his occupation for nearly five weeks, in two periods of seventeen days each. His knowledge of these facts did not depend on advice or information received from a physician, but was a matter peculiarly within his own experience. The materiality of questions nine and ten and their answers, is conceded by appellant. Under the decisions it could not be otherwise. The evidence of the falsity of these answers was given by his employer, his attending physician, and the medical director and attending physicians at the Lutheran Hospital, and the hospital records. It was clear, precise, indubitable and uncontradicted and was of such a character that a capricious disbelief of it should not be permitted: Timlin v. American Patriots, 249 Pa. 465, 469; Moncur v. Western Life Ind. Co., 269 Pa. 213, 217; McEntee v. N. Y. Life Ins. Co., 79 Pa. Superior Ct. 457.

In the light of this evidence the court below was justified in entering judgment for the defendant non obstante veredicto because of the insured's knowing and wilful misrepresentation of a material fact, amounting to a concealment of material information concerning his past state of health.

We have examined all the cases cited by the ap-

pellant and none of them leads us to a different conclusion. The law of this State relative to false representations—as distinguished from warranties—in an application for life insurance is clearly set forth in Suravitz v. Prudential Ins. Co., 244 Pa. 582. It was there held that the materiality of the representation was not the only matter that might be inquired into, but that the accuracy and good faith of the agent in writing down the applicant's answers, and the latter's knowledge of what had been so written, and his good faith in making the answers, might be inquired into; and that a representation that the applicant was in *good health* meant apparent good health without any known or felt symptom or disorder, and did not necessarily exclude the existence of latent unknown diseases on the part of the applicant (pp. 588, 589). There was conflicting evidence in that case and it was conceded to be for the jury. The Suravitz case has been followed and approved in all subsequent decisions of the Supreme Court where the question has been raised.

In Skruch v. Metropolitan Life Ins. Co., 284 Pa. 299, where there was a similar clause in the policy—that the answers, in the absence of fraud, should be deemed representations and not warranties—the applicant had represented that he had never had convulsions, and had had no illness since childhood, nor any other except as recorded. The insurance company offered to show by the testimony of a physician who had attended him that these answers were false and that the insured had been treated by him for convulsions and epilepsy, but the court below refused to admit it, basing its ruling on the Act of June 7, 1907, P. L. 462. The Supreme Court reversed, holding that the answers were material to the risk and the evidence should have been admitted, but held that in the circumstances there present the case was for the jury. We do not understand from this that every

case of false representation—as distinguished from warranty—is for the jury, but only those where there is a real question as to the materiality of the answer, or of the good faith of the applicant in making the answers, or of the good faith and accuracy of the company's agent in writing down the answers, if they were written by him, or of the knowledge of the applicant of the answers so written; or where there is a dispute or contradiction as to the falsity of the representations. In Livingood v. New York Life Ins. Co., 287 Pa. 128, the representation of the applicant was that he was in good health. He subsequently died of tuberculosis. But there was no clear proof that he was suffering from the disease when he made application for insurance and no proof that he knew of or should have observed such a condition as then existing. The Supreme Court said, speaking through Mr. Justice SADLER (omitting the cases cited): "It will not be questioned that, where untrue essential facts have been deliberately certified to, and, as a result, the policy issued, there can be no recovery where death occurs ...... But where the misstatement has been set forth inadvertently, or the narrative is incomplete in detail, and was made without intention of concealing the truth, a recovery is permissible, the question of good faith being for the jury. If there was any deliberate attempt to deceive, the defendant is entitled to judgment ....... When the applicant asserts he is in good health, and reasonably believes this to be true, though in fact suffering from some insidious disorder, a recovery may be had. The insured is bound to honestly disclose facts concerning his physical condition, which he knew of, or should have observed, but he is not charged with knowledge of the existence of a latent disease of which, from the nature of things, he could have no exact information." So, in the present case, judgment was not entered against the plaintiff because of the insured's

false reply as to his having heart disease, of which he may not have been aware; but because of his false answers as to his having had any illness or disease within the past five years that incapacitated him from work for more than a week at a time. Having full knowledge of these material facts he was bound to disclose them.

In Mellosky v. Eureka-Maryland Assurance Corp., 93 Pa. Superior Ct. 314, the representation attacked was that the applicant was in good health and had never suffered from certain diseases. The proof adduced to support the contention that these representations were false was only the professional opinion of physicians, who had never seen the insured prior to the date of the policy. On the other hand, there was testimony, including that of the company's agent, of the insured's general good health at the time of applying for insurance and for years prior thereto. The question was necessarily for the jury. McBride v. Sun Life Ins. Co., 90 Pa. Superior Ct. 35 is a similar case.

Feinberg v. N. Y. Life Ins. Co., 256 Pa. 61, was very similar to the Suravitz case in its facts. The insured's alleged disorder was of a latent character; he could not read or write English, and the accuracy of the answers written down by the company's agent was attacked. To this class belong, South Side Trust Co. v. Eureka Life Ins. Co., 74 Pa. Superior Ct. 566; Soroko v. Woodmen of the World, 76 Pa. Superior Ct. 328.

In Oplinger v. N. Y. Life Ins. Co., 253 Pa. 328, the evidence as to the verity of the insured's answers was conflicting. Martin v. Prudential Ins. Co., 83 Pa. Superior Ct. 509, 513; and Baer v. State Life Ins. Co., 256 Pa. 177, are cases along this line.

The present case is more nearly like McEntee v. N. Y. Life Ins. Co., supra, where the court below entered judgment non obstante veredicto in favor of

8

the defendant because of undisputed false representations made by the insured, in his application for insurance, as to the physicians whom he had consulted, and the illnesses or ailments for which he had been treated, within five years immediately preceding his applying for insurance; and this court affirmed the judgment.

The assignments of error are overruled and the judgment is affirmed.