## Baxter, Appellant, *v.* New York Life Insurance Company.

288

Argued September 25, 1934.

Before Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*George P. Williams, Jr.,* of *Orr, Hall & Williams,* for appellant.

*Arthur G. Dickson,* and with him *Louis H. Cooke,* for appellee.

OPINION BY PARKER, J., December 18, 1934:

Frank O. Cruger, on September 22, 1931, procured from the New York Life Insurance Company, the defendant, a policy of insurance for $2,000 on his life and paid the quarterly premiums due thereon until his death on July 8, 1932. The plaintiff, an assignee of the beneficiary named in the policy, brought this action in assumpsit to recover the face value thereof with interest and, after trial, the jury found a verdict for the plaintiff for the amount of his claim. Thereafter the court below entered a judgment for the defendant n. o. v., and the plaintiff has appealed, complaining of the entry of such judgment.

The controversy arose as a result of a default in the payment of a premium and the subsequent reinstatement of the policy after certain representations by insured which the defendant alleges were false, known to the assured to be false, material to the risk assumed, and fraudulently made. Before reinstating the policy, the insured was required to sign a written statement, the material parts of which were as follows: "I hereby apply for reinstatement ...... I make the representations contained in my answers to the following questions: 1. Are you now, to the best

of your knowledge and belief, in the same condition of health as you were when this policy was issued? (If not, give details.) Ans. Yes. 2. Within the past two years have you had any illnesses, diseases or bodily injuries or have you consulted or been treated by any physician or physicians? (If so, give full details, including nature, date, and duration of each illness, disease or injury, the name of each physician, and the dates of and reasons for consultation or treatment.) Ans. No. ...... I hereby certify that the foregoing answers are full, complete and true, and agree that the Company believing them to be true shall rely and act thereon ...... [Signed] F. O. Cruger." The company reinstated the policy on January 26, 1932, the same day on which the application for reinstatement was made.

The case was presented upon the theory that the written statement constituted a representation and not a warranty. This position being favorable to the appellee, we will assume it to be correct. The applicable legal principles are clearly and fully set forth by the Supreme Court in the case of Kuhns v. New York Life Ins. Co., 297 Pa. 418, 423, 147 A. 76, as follows: "It is undoubtedly the law that, if of the former class [representations], as here, the making of an untrue statement of a material fact, causing the company to act to its prejudice, vitiates the contract, but a forfeiture does not follow where there has been no deliberate intent to deceive, and the known falsity of the answer is not affirmatively shown. Mere mistakes, inadvertently made, even though of material matters, or the failure to furnish all details asked for, where it appears there is no intention of concealing the truth, will not have this effect: Skruch v. Metropolitan Life Ins. Co., 284 Pa. 299; Suravitz v. Prudential Ins. Co., 244 Pa. 582; Livingood v. New York Life Ins. Co., 287 Pa. 128; Gimbel v. Aetna Life Ins.

Co., 95 Pa. Superior Ct. 1. The burden of proving the falsity of the answer, and that it was deliberately given, is on the defendant, who asserts it: Livingood v. New York Life Ins. Co., supra; Jackson v. State Mutual Benefit Assn., 95 Pa. Superior Ct. 56. Unless this situation is made apparent by undisputed proof, documentary or oral, the question is one for the jury, and is not to be declared as a matter of law by the court.''

In a consideration of the questions raised on this appeal, the plaintiff having had a verdict is entitled to have facts as well as all reasonable inferences to be drawn therefrom viewed in a light most favorable to him.

The defendant, in proof of its averments, showed by the testimony of a physician, Dr. Weigand, in charge of the dispensary at the Lankenau Hospital in Philadelphia, that the insured consulted him there on January 20, 1932, and that Dr. Weigand was introduced to Cruger as a physician when the insured described his condition as follows: ''He told me he had had a sore stomach for about eight or ten days; that when he pressed the pit of his stomach, the pain and distress was increased; that for the last two years he occasionally had a heavy feeling after meals, which disappeared when he worked; he also said he usually awoke in the morning with juice flowing from his mouth which stopped when he ate; that he had been very nervous; when he was called by someone, he got a lump in his stomach; he also complained of loss of appetite for five years.'' After this interview the physician did not report to Cruger his diagnosis until after January 26, 1932, but suggested that various tests be made. These tests were made by employees of the hospital not physicians on January 20 and on January 26 in the morning before the request for reinstatement was executed.

Mrs. Emma F. Cruger, widow of the insured, a witness called by plaintiff, testified that she accompanied her husband to the dispensary on January 20 and that he went there at her suggestion.

Cruger was admitted to the hospital on February 16, 1932, where he came under the attention of Dr. Clark Brown. At that time the patient told Brown that he had been well until November, 1931, "when he began to notice a bloated feeling in the epigastrium after eating......About three hours after meals the fullness in his epigastrium disappeared until the next meal. He had no nausea or vomiting. The lump in his epigastrium—the swelling would cause him pain after meals, making him afraid to eat a sizeable meal." On February 20, 1932, Cruger was operated upon but his condition was so serious that a growth then found was not removed and he died of cancer in July, 1932.

The physicians called by defendant produced in court the hospital records and testified therefrom as to the visits by Cruger to the dispensary and hospital and the symptoms described by Cruger.

The burden was on the defendant (Kuhns v. New York Life Ins. Co., supra) to show (1) a false statement, (2) of a material nature, (3) causing the company to act to its prejudice in order to vitiate the contract, and to justify a forfeiture the false statements were required to be affirmatively shown (4) to have been knowingly made with deliberate intent to deceive.

There were written proofs offered showing that the insured represented that he had not consulted or been treated by any physician within two years, or had any ailment, disease, or bodily injury, and that to the best of his knowledge and belief he was in the same condition of health as when the policy was issued. It was shown by uncontradicted proofs that the insured did, on January 20, just four days prior to the signing of the statement, consult a physician and that he

then stated to the physician symptoms which were at least indicative of some illness or disease that was not of a trivial nature. In addition, the plaintiff, as we have indicated above, proved by the widow of the insured that he had consulted a physician and the visits to the dispensary and hospital were proven by the physicians who testified from hospital records then and there produced in court. This established by indisputable proofs the fact that such representations were falsely and knowingly made.

In Rigby v. Metropolitan Life Ins. Co., 240 Pa. 332, 336, 87 A. 428, the Supreme Court repeated with approval the following extract from the case of Murphy v. Prudential Ins. Co., 205 Pa. 444, 453, 55 A. 19: "We have held it to be error to submit the case to the jury where the uncontroverted evidence shows that the insured made false answers to questions as to when insured was last attended by a physician and for what cause, how long since he had consulted a physician and for what disease, and as to whether he had ever been sick, had any serious illness, had ever consulted a physician." While in those cases the statements were warranties, it was clearly indicated that a representation that one had not consulted a physician was a matter material to the risk. Also, see United Brethren Mutual Aid Society v. O.'Hara, 120 Pa. 256, 13 A. 932, and Lutz v. Metropolitan Life Ins. Co., 186 Pa. 527, 40 A. 1104. In this case there is not any doubt as to the materiality of the representations which justified the submission of that question to a jury. If the insurance company had availed itself of an opportunity to investigate the state of health of the insured, which would have been suggested by true answers, it would have discovered the condition of the insured. This was the apparent purpose of the questions.

Again, it is clear that the false statement of the

insured caused the company to act to its prejudice. The statement contained the representation that the answers were given so that the company could "rely and act thereon." It did so to its apparent prejudice.

It is idle to suggest that these answers were not knowingly and deliberately made with the intent to deceive. The insured allowed the policy to lapse and within three or four days after he had visited the physician sent a check in payment of the premium then in default and signed a statement that he had not consulted a physician. It is particularly significant that the insured, on the morning of the day on which he signed the statement and before signing it, had visited the dispensary and submitted to extensive tests.

The Supreme Court, in the case of Koppleman v. Com. Cas. Ins. Co., 302 Pa. 106, 111, 153 A. 121, in considering the effect of the Act of June 23, 1885, re-enacted by Section 622 of the Act of May 17, 1921, P. L. 682 (40 PS 757), which provides that "the falsity of any statement in the application for any policy ...... shall not bar the right to recovery thereunder, unless such false statement was made with actual intent to deceive, or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer," said: "Ordinarily questions of good faith and materiality are for the jury, and where the materiality of a statement to the risk involved, is itself of a doubtful character, its determination should be submitted to the jury. But it was never intended by the Act of 1885, nor did that act assume, to change the law in cases where the matter *was palpably and manifestly material to the risk, or where it was absolutely and visibly false in fact.*" The same principles would apply here, and it is most apparent that the statements made were "palpably and manifestly material" to the risk and were absolutely false in fact.

In the case of Dzsujko v. Eureka-Md. Assur. Corp., 109 Pa. Superior Ct. 9, 165 A. 518, we had occasion to consider the effect of the recent case of Nanty-Glo Boro. v. Amer. Surety Co., 309 Pa. 236, 163 A. 523, on former decisions in insurance cases. In that case we indicated that the case must be submitted to a jury even where facts were undisputed if they were not established by what are referred to as indisputable proofs. The Nanty-Glo case has no application here for the reason that the plaintiff himself proved without contradiction that the insured had visited the dispensary at the hospital for consultation with a physician, and the facts with relation to the various visits to the hospital and the symptoms given by the insured were shown by hospital records.

We have given full consideration to that line of cases such as McBride v. Sun Life Ins. Co., 90 Pa. Superior Ct. 35, where it was held that it was for the jury, not for the court, to decide whether a visit by a fireman to a department surgeon maintained by the city constituted attendance by a physician when the patient showed no sign of illness other than minor ailments which would not affect the action of an insurance company even though it knew the fact. Here the patient did not consult the physician for a trivial matter or visit one of those clinics that is established for the purpose of discovering disease at an incipient stage as a matter of prevention rather than treatment, but rather a situation in which it cannot be gainsaid that the ailment was not trivial. In addition, the representation principally relied upon was not as to a state of health but as to whether a physician had been consulted.

We are all of the opinion the judgment should be affirmed.

Judgment affirmed.