## Boltz *v.* Metropolitan Life Insurance Company, Appellant.

Argued April 30, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*D. C. Jennings,* for appellant.

*Edward O. Tabor,* with him *Henry G. Meyer,* for appellee.

OPINION BY PARKER, J., July 15, 1937:

The plaintiff, Clara W. Boltz, brought this action to recover the face of a policy of life insurance issued by defendant and recovered a verdict for the amount of installments due when the action was begun. Judgment was entered for the plaintiff on the verdict and defendant has appealed, assigning as error the refusal of its motion for judgment n. o. v.

On trial the plaintiff made out a prima facie case and defendant then offered proofs tending to show that the insured, in his written application for the insurance, had knowingly made false and fraudulent answers to questions which were material to the risk, and that such answers were at the time examined by the beneficiary who likewise knew that the answers were false. The ultimate question involved is whether the fraud relied upon was established by proofs of such a character that the question as to the existence of fraud was

for the court and not for the jury. It is conceded that the answers complained of were material to the risk and were in fact not true, but plaintiff strenuously denied that the insured knowingly or fraudulently made such false answers.

The policy was issued April 18, 1933, after a written application by the insured and he died May 12, 1934. Plaintiff admits that the defendant has tendered repayment to plaintiff of the premiums received by it. The policy contained the standard provision that "all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties." In such a case the insurer to avoid the policy must prove fraud upon the part of the insured in the making of the statements; he must show not only that the answers were false in fact, but that the insured knew they were false when he made them: *Stein v. New York Life Ins. Co.*, 319 Pa. 225, 179 A. 589; *Lilly v. Metropolitan Life Ins. Co.*, 318 Pa. 248, 251, 177 A. 779.

The Supreme Court in a recent case, *Evans v. Penn Mutual Life Ins. Co.*, 322 Pa. 547, 186 A. 133, in an opinion by Mr. Justice Drew, has so fully discussed the law and so clearly stated the principles involved in this type of case that it is only necessary to apply the principles there set forth to the facts of the present case.

The statements in the application upon which defendant relies were as follows: "6. Occupation. If more than one, state all. Nature of Employer's business. Answer: Bench Work—Westinghouse Elec. 7. Exact duties of occupation. A. Bench work mechanic. 8. Any change in occupation contemplated? If yes, give particulars. Answer No. 9. Place of business (City, Street and No.) By whom employed? Answer: East Pittsburgh, Westinghouse Elec. & Mfg. 10. Former occupations (within the last ten years). Answer: Same. 6. Present condition of health?

Answer: Good. 7. (a) When last sick? February, 1933. (b) Nature of last sickness? Cold. (c) How long sick? Answer: two weeks, Not confined. 9. Any physical or mental defect or infirmity? If so, give particulars? Answer: No. 11. Have you had any surgical operation, serious illness or accident? If yes, give date, duration and name of ailment? Answer: No. 15. Have you ever been told that you had any heart trouble? Answer: No. 16. Name and address of your usual medical attendant? Answer: Dr. Wright. 17. Have you ever had any of the following complaints or diseases? ...... Disease of the heart ...... Syphilis, Spinal disease ...... if yes, give particulars, dates and duration? Answer: No. 18. Have you been attended by a physician during the last five years? If yes, give name of complaints, dates, how long sick, and name of physician? Answer: February, 1933, Cold. 20. How much time have you lost from work through illness during the last five years? Answer: None."

The defendant offered proofs tending to show that the insured, prior to 1928, was by occupation an instrument maker in the research department of Westinghouse Electric and Manufacturing Company. At that time he was compelled to give up his work due to failing eyesight and was not employed again but received relief from that company under a plan maintained by it. Defendant called as a witness Dr. H. L. Mitchell who testified that he treated insured from August 17, 1928, until about the time of his death, seeing him professionally during the latter part of that period on an average of once a month; that insured was suffering from an inflammation of the nervous system caused by syphilis; that for eight months before insured first consulted him his vision was failing and continued to fail to such an extent that he could not perform his work; and that his mentality was dulled and he had a poor memory. Later there developed an aneurysm of the

aorta which was the direct cause of death. Due to the nature of the disease and a desire on the part of the physician not to retard recovery, the physician did not advise the patient of the cause of his illness but did communicate the facts to the wife, advising her as to both the syphilitic condition and the heart ailment. The insured was treated both at a hospital and privately.

It is well settled that questions as to the truth or falsity of the answers and whether they were given by the insured in good faith are ordinarily for the jury: *Evans v. Penn Mutual Life Ins. Co.,* supra; *Suravitz v. Prudential Ins. Co.,* 244 Pa. 582, 91 A. 495. The real question, therefore, as we have indicated, is whether the proofs were of such a character as to avoid the effect of the rule laid down in *Nanty-Glo Boro. v. Amer. Surety Co.,* 309 Pa. 236, 163 A. 523. That class of cases is thus described by Mr. Justice DREW in the Evans case, supra (p. 555): "Where it affirmatively appears, from sufficient documentary evidence, that the policy was issued in reliance on false and fraudulent statements, made by or on behalf of the insured, as where false answers are shown to have been given by insured under such circumstances that he must have been aware of their falsity, the court may direct a verdict or enter judgment for the insurer. Facts sufficient to avoid the policy may appear from hospital records, where such records are competent evidence for that purpose and are not materially contradicted. Likewise, uncontradicted statements appearing in the proofs of death, if received in evidence generally, as admissions by adoption of the beneficiary, or if otherwise competent to show the truth of the matters asserted therein, may establish facts which will justify the direction of a verdict in the insurer's favor. Proofs of death, however, as well as hospital records, may be contradicted or explained, and the disputed issues thus raised are

for the consideration of the jury. Admissions in the pleadings may, of course, establish facts to avoid the policy without the intervention of a jury. But in any case, the questions whether or not the answers were false and whether or not they were given by insured in good faith are questions of fact, and their determination must be left in the jury's hands whenever the evidence concerning them is conflicting, or whenever the burden of proving them is carried by oral testimony, even though such testimony is uncontradicted. A recognized exception to the latter rule is of course to be found in the situation where the uncontradicted testimony of a party's own witness establishes facts essential to his opponent's case."

We will therefore now limit our reference to those facts which were established by proofs of such character that the question became one of law for the court. It must be conceded that if the only facts not correctly stated by the insured were those with reference to the assertion that he did not have syphilis, the question would be for the jury for the defendant not only failed to prove that insured knew that he had that disease, but the defendant's own evidence tended to show that insured did not know that he was suffering from syphilis. In addition, the evidence as to the existence of that affliction depended solely upon oral proofs.

Defendant relies on several representations made by the insured, to wit, that at the time he made his application he was employed as a bench mechanic by Westinghouse when he had not been so employed since 1928; that his condition of health when the policy was issued was good and that he did not have any physical or mental defect or infirmity when in fact his vision was so affected by disease that he was not gainfully employed; that he failed to disclose the fact that he had been attended by Dr. Mitchell although he was treated by that physician for almost five years continuously;

and finally that he had not lost any work through illness for five years when as a fact he had not been employed since August, 1928, due to the condition of his eyes. The plaintiff was called as a witness and admitted that the insured had been attended by Dr. Mitchell over a considerable period up to the time the policy was issued and afterwards; that due to the condition of his eyes he did not work after August, 1928, for Westinghouse or any other employer. The proofs of death submitted by the plaintiff also showed that the insured did not attend to his usual work after 1928 and that he was treated from 1928 by Dr. Mitchell.

The inquiries as to the attendance by a physician, as to absence from work, and as to health and physical defects and infirmities were matters material to the risk: *Murphy v. Prudential Ins. Co.,* 205 Pa. 444, 453, 55 A. 19; *Rigby v. Metropolitan Life Ins. Co.,* 240 Pa. 332, 336, 87 A. 428; *United Brethren v. O'Hara,* 120 Pa. 256, 13 A. 932; *Baxter v. New York Life Ins. Co.,* 115 Pa. Superior Ct. 287, 293, 175 A. 899; *Rathkovic v. Metropolitan Life Ins. Co.,* 126 Pa. Superior Ct. 492, 191 A. 201. Slight troubles, temporary and light illness not of such a character as to produce bodily infirmity or serious impairment or derangement of vital organs do not disprove a representation as to good health: *Clemens v. Metropolitan Life Ins. Co.,* 20 Pa. Superior Ct. 567; *Livingood v. New York Life Ins. Co.,* 287 Pa. 128, 131, 134 A. 474. Certainly an impairment of vision to such an extent that it was reduced to one-eighth of normal and such that the insured could not be gainfully employed and required the constant attention of a physician was not a light and passing ailment, not of sufficient consequence to have a bearing on the health of an applicant. We are not dealing with a case where there is a slight defect in vision which could be easily corrected by a physician or optician. The error into which the plaintiff, as well as the court below, fell was

in failing to recognize the fact that the insurer was entitled to have the information requested for the purpose of making further investigation. The fraud was not disclosed by a failure to report the exact character of the disease but rather by a failure to furnish the information which would have enabled the insurer to protect itself by making further investigations. The appellant does not complain of the failure of insured to report the exact nature of the disease from which he was suffering. It does complain of the failure to report facts, physical impairment, attendance by a physician, and inability to work due to a serious ailment.

The falsity of these answers was established by the testimony of the plaintiff, the beneficiary in the policy, and by the proofs of death submitted by her, and they were not contradicted.

The unreported attendance by a physician and the physical defects taken with the inability to work due to that condition, were so serious and so recent that the insured could not have forgotten them. The facts bring the case within the description given in the Evans case, supra (p. 553): "The circumstances preceding and attending the making of the statements may be such that the insured must be said to have been aware of their falsity at the time, or that an inference of fraud is otherwise irresistible, as for instance where an unreported illness or disability of insured was so serious and so recent that he could not have forgotten it." Also, see *New York Life Ins. Co. v. Brandwene,* 316 Pa. 218, 223, 172 A. 669; *Kzyszton v. John Hancock Mut. Life Ins. Co.,* 320 Pa. 65, 181 A. 587; *Baxter v. New York Life Ins. Co., supra.* To hold that insured's statements were made innocently imposes too great a burden on human credulity. No other conclusion can be drawn from plaintiff's own testimony, uncontradicted, than that the insured knew when he applied for the policy that the facts represented by him were not true.

Judgment reversed and it is directed that judgment be entered for the defendant.