Loder, Appellant, *v.* Metropolitan Life Insurance Company.

156

Argued May 6, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*R. B. Ivory, Jr.,* for appellant.

*D. C. Jennings,* for appellee.

OPINION BY PARKER, J., July 15, 1937:

The plaintiff, Pearl Loder, brought this action in assumpsit to recover the face of an insurance policy issued by the defendant on the life of her husband, William M. Loder, and recovered a verdict. The court below entered judgment n. o. v. for the defendant and the plaintiff has appealed. The court below correctly disposed of the case.

Judgment was entered for the defendant on the ground that the insured knowingly made false and

fraudulent answers to questions in a written application which was attached to and made part of the policy. The controlling principles involved are substantially the same as in the case of *Boltz v. Metropolitan Life Ins. Co.*, 128 Pa. Superior Ct. 147, 193 A. 400, and we will, as far as possible, avoid repeating what was there said.

The policy was dated April 1, 1933, and the application for insurance was in two parts dated March 6 and March 8, 1933. The insured died on January 5, 1934. The policy provided that "all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties." Consequently, the burden was on defendant to show that the representations were untrue, that they were material to the risk, that the insured knew that they were false when he made them, and that the statements caused the insurer to act to its prejudice. The written answers upon which the defendant depends were as follows: "7. (a) When last sick? Answer: Never. 8. Have you ever changed your residence or left your work for more than one month on account of your health? If yes, give date, duration and name of ailment. Answer: No. 18. Have you been attended by a physician during the last five years? If yes, given name of complaints, dates, how long sick, and names of physicians. Answer: No. 19. Have you had any treatment within the last five years at any dispensary, hospital, or sanitarium? If yes, give date, duration, name of ailment and name of institution. Answer: No. 20. How much time have you lost from work through illness during the last five years? Answer: None."

The defendant, in support of its position, offered evidence tending to show that during 1930 and the latter part of 1931 and early part of 1932 the insured was attended by a physician and received treatment in the hospital department of the Pittsburgh City Home and

Hospital (called "Mayview"). The answer of the plaintiff to this defense was two-fold: to wit, (a) that while the insured was in the public institution named he was an inmate of the home maintained for paupers and not of the hospital, and (b) that in any event the insured's good faith in making the answers was a question of fact for the jury which question had been determined adversely to the defendant.

The treatment in the hospital and attendance by a physician were evidenced by the same proofs. To simplify the controversy we will discuss the proofs with relation to treatment in the hospital. That the insured was an inmate of Mayview from July 19, 1930, to October 21, 1930, and from September 25, 1931, to January 7, 1932, was established beyond controversy. This was shown by the oral proofs of the physicians in charge of the hospital, by the hospital records, by the pleadings, and by the uncontradicted testimony of the plaintiff.

The plaintiff, however, contends that the insured was an inmate of Mayview as a pauper only. That institution is divided into two departments, one being a home for paupers and the other a hospital department for those who are mentally or physically ill. The records of the hospital department which were produced show conclusively that William M. Loder was admitted on both occasions directly to the hospital department. This was further corroborated by the testimony of an interne and of two physicians who treated Loder as a patient. There was no contradiction of this evidence. Plaintiff relied for rebuttal of this fact alone on the testimony of a son who said that he arranged for the admission of the insured as a pauper only. This does not in any way contradict the documentary evidence that he was in fact admitted to the hospital. That he entered Mayview as a public charge sheds no light on

the question as to whether he was in the home or the hospital.

Immediately related to the question is the fact that the hospital records show that during the first stay at the hospital Loder was treated for alcoholic neuritis. He rested in bed for at least a part of the time. He was given strychnine and tincture of nux vomica was then administered. He also received a cathartic and a dressing of lead and laudanum was applied to both feet. He remained in that department under the supervision of a physician for three months. The hospital records covering the second visit to the hospital show that his condition was then diagnosed as chronic valvular heart disease and chronic gastritis and that the medication consisted of digitalis and bismuth subnitrate. He remained the second time in the hospital over three months.

While the admission of the hospital records was not assigned as error, complaint is made in the argument that these records were not admissible. This was not the subject of an assignment of error and therefore need not be considered by us. It appears, however, that the proof was made in exact accordance with the rules laid down in *Paxos v. Jarka Corp.*, 314 Pa. 148, 171 A. 468. The records were made contemporaneously with the acts to which they purport to relate; at the time of the making of the records it was impossible to anticipate reasons which might subsequently arise for making a false entry; and the person making the statement had knowledge of the matters stated. There is no merit in the suggestion that the interne who actually made the record was not at that time a qualified physician. The testimony shows clearly that the records were made under the immediate supervision of the resident physician in charge who examined the patient and checked the report as recorded by the interne. The interne therefore acted simply as an amanuensis for the physi-

cian and the records are the records of the hospital as substantiated by both the interne and the resident physician in charge.

Certainly inquiries as to attendance by a physician and treatment in a hospital are material to the risk to be assumed by an insurer unless it be for some trivial ailment: *Baxter v. New York Life Ins. Co.*, 115 Pa. Superior Ct. 287, 175 A. 899. It is idle to suggest that although the insured was confined to a hospital for three months in 1930 and for a like period in the latter part of 1931, where he received treatment for serious ailments, he could in good faith assert that he had not been attended by a physician and that he had not been treated in any "dispensary, hospital or sanitarium." The attendance by a physician and the treatment in the hospital were both recent in time and for serious ailments, alcoholic neuritis and chronic valvular heart disease. It is apparent that the answers were given so that the company could rely and act thereon and were knowingly and fraudulently made with intent to deceive. The answers must have been known by the insured to be false when made and in such case they are "presumptively fraudulent": *Evans v. Penn Mutual Life Ins. Co.*, 322 Pa. 547, 553, 186 A. 133; *Mutual Life Ins. Co. v. Hilton-Green*, 241 U. S. 613, 622, 36 S. Ct. 676.

It remains to inquire whether the evidence was of such probative force and character as to make the question of good faith upon the part of the applicant for insurance one of law for the court. The rule applicable as laid down in *Evans v. Penn Mutual Life Ins. Co.*, supra (p. 560), is that where the statements are made representations, the insurer, to avoid the policy, must show the falsity and bad faith of the statements affirmatively "(a) from competent and uncontradicted documentary evidence, such as hospital records, proofs of death, or admissions in the pleadings, or (b) from the uncontradicted testimony of plaintiff's own witnesses."

Treatment by a physician in a hospital was shown by the unimpeached records of the hospital, by the pleadings, and by the admissions of plaintiff. There was no conflict in the testimony or contradiction of the documentary evidence. The court therefore properly, in the opinion of all of us, entered judgment for the defendant.

Judgment affirmed.