Bailey, Appellant, *v.* Pacific Mutual Life
Insurance Company of California.

Argued May 8, 1939. Before KEPHART, C. J., SCHAFFER, DREW, LINN, STERN and BARNES, JJ.

*R. T. Mutzabaugh,* with him *F. M. Nash,* of *Nash & Mutzabaugh,* for appellant.

*W. D. Gallup,* with him *F. D. Gallup* and *E. G. Potter,* of *Gallup, Potter & Gallup,* for appellee.

OPINION BY MR. JUSTICE DREW, June 19, 1939:

This is an action in assumpsit by the plaintiff, May E. Bailey, to recover the amount of a life insurance policy issued by defendant company on the life of her sister, Nellie E. Potter, in which policy plaintiff was named as beneficiary. Defendant resists the claim on the ground that certain answers of the insured in her application for the insurance were false, fraudulent and untrue, and were given for the purpose of obtaining the policy by misrepresentation and fraud. The jury found for plaintiff in the amount of her claim; the lower court entered judgment for defendant n. o. v., and plaintiff appealed.

The plaintiff proved a prima facie case by introducing into evidence the policy of life insurance between the insured and defendant company and the pertinent paragraphs of defendant's affidavit of defense, admit-

ting the issuance of the policy, the death of the insured while the policy was in force, and the receipt of the proofs of death.

The ultimate question involved is whether the fraud relied upon was established by proofs of such a character that the question as to the existence of fraud was for the Court and not for the jury.

The policy provided, inter alia, as follows: "The application, a copy of which is attached hereto, together with the contents of the succeeding pages of this Policy and the benefits, conditions and values set forth thereon, are made a part hereof." It contained the statutory provision making answers to the questions in the application, representations and not warranties.

The defendant offered proof tending to show that the insured, in her written application for the insurance, relating to the applicant's medical history, had knowingly made false and fraudulent answers to questions which were material to the risk, and that such answers were known by the applicant to be false.

The alleged false and fraudulent representations upon which defendant relied are contained in the following question and answer appearing in the application: "8. What injuries or illnesses, or treatments by or consultations with physicians or practitioners, have you had during the last seven years?", answer, "None." This question and answer was set up in defendant's amended affidavit of defense under New Matter and was admitted (without answer) in plaintiff's Reply, and no question is raised that the answer was not written as given by the insured. At the trial defendant offered in evidence the New Matter set up in the affidavit of defense together with that part of plaintiff's Reply thereto for the purpose of showing times and places of consultation had by the insured with different physicians. Plaintiff's Reply denied the character of the consultations but not the fact thereof and the times and places when the insured had such consultations. The offer was al-

lowed by the Court and the evidence admitted without objection by the plaintiff, and, therefore, by uncontradicted documentary evidence the following facts were established:

That the insured had at least thirteen consultations with four different physicians in Buffalo, N. Y., a distance of close to 100 miles from her residence in Bradford, Pa., between August 31, 1933, and August 25, 1934, a period of almost one year, the last of said consultations having occurred only seven or eight months prior to the insured's application for the policy of insurance. The policy was issued on April 9, 1935, on an application made by her on March 8, 1935, and she died on December 22, 1935.

It is admitted by the pleadings and the testimony of several of plaintiff's own witnesses that the insured had these consultations with the four doctors, one of whom was a specialist in diseases of the digestive tract, another a heart specialist, another a neurologist, and the fourth a roentgenologist. Moreover, plaintiff's witness, Dr. E. M. McLean, insured's family physician, admitted that but nine months prior to the time of making the application by insured, he was given detailed information by one of the specialists consulted by the insured that she was suffering from a hypertension with cardiac hypertrophy, urethral stricture, moderate changes in the kidney with slight retention of urea, and intraventricular heart block, with multiple premature contractions indicative of coronary vascular disease. He stated that he had not informed insured of this report because he thought she had been advised by the specialist and directed as to treatment. He insisted that the insured had not at any time complained to him of any illness. However, he testified that the insured discussed with him a treatment that one of the specialists had prescribed for her.

The frequency of these consultations with specialists, within such a short time before the application for the

policy and so shortly before the insured's death, refutes the argument of plaintiff that these visits were made by insured, not because of any illness, but merely for the purpose of a general physical check-up. As to this contention the learned court below aptly said: "Such a series of consultations cannot be dismissed as would one physical examination or check-up, or as in the case of treatments for trivial and minor ailments by a physician in the locality of the person's own residence." Inquiries as to prior medical attendance are material to the risk and false answers thereto must of necessity permit the insurer to avoid the policy, not only because of a failure to report the exact nature of previous illness, but also because of a failure to furnish the information which would have enabled the insurer to protect itself by making further investigations: *Rigby v. Metropolitan Life Ins. Co.*, 240 Pa. 332; *Boltz v. Metropolitan Life Ins. Co.*, 128 Pa. Superior Ct. 147.

The consultations were clearly of such important character and of such recent occurrence as could not be forgotten, and the insured must have been fully cognizant that she hid them from the insurer by her false answer. In this connection, we said in *Evans v. Penn Mutual Life Ins. Co.*, 322 Pa. 547, 553: "The circumstances preceding and attending the making of the statements may be such that the insured must be said to have been aware of their falsity at the time, or that an inference of fraud is otherwise irresistible, as for instance where an unreported illness or disability of insured was so serious and so recent that he could not have forgotten it." In the Evans case, we had occasion to review the law on this subject, and most recently reiterated the principles there set forth in *Indovina v. Metropolitan Life Ins. Co.*, 334 Pa. 167. In these cases we stated the rule to be that where the statements are made representations, the insurer, to avoid the policy, must show they were false and insured knew they were false or otherwise acted in bad faith in making them.

If such falsity and the requisite bad faith affirmatively appear (a) from competent and uncontradicted documentary evidence, such as hospital records, proofs of death, or admissions in the pleadings, or (b) from the uncontradicted testimony of plaintiff's own witnesses, a verdict may be directed for the insurer.

Here the statement in insured's application was patently false and material to the risk. Its falsity is clearly established by admissions in the pleadings and by uncontradicted testimony of plaintiff's own witnesses, which made necessary the entry of a verdict in favor of the insurer.

Judgment affirmed; costs to be paid by appellant.