Glaser, Appellant, *v.* Metropolitan Life Insurance Company.

Argued October 12, 1939.

Before KELLER, P. J., CUNNINGHAM, STADTFELD, PARKER and RHODES, JJ.

*James J. O'Brien,* with him *Fox, Rothschild, O'Brien & Frankel* and *Newman & Master,* for appellant.

*Owen B. Rhoads,* with him *John Bishop, Dechert, Smith & Clark* and *Harry Cole Bates,* for appellee.

OPINION BY KELLER, P. J., March 2, 1940:

Counsel for appellant either misunderstands or misapplies the ruling of the Supreme Court in *Evans v. Penn Mutual Life Ins. Co.,* 322 Pa. 547, 186 A. 133. While that decision upheld the submission of that case to the jury, because the evidence was not such as to require the court to hold, as matter of law, that the insured had made false representations as to the condition of his health, etc. in his application for insurance, which were material to the risk, the very full, clear and comprehensive opinion of Mr. Justice DREW recognized that if it affirmatively appears from sufficient documentary evidence, such as hospital records, which are not materially contradicted, or from the uncontradicted evidence of plaintiff's own witnesses, that false and fraudulent answers were given respecting matters material to the risk, in such circumstances that the insured must have been aware of their falsity, the court may properly direct a verdict for the insurer. See pages 555 to 560 of the Evans case report, clause (3) of the summary on page 560, and cases cited in notes 12, 13 and 15 to the opinion. See also *Kzyszton v. John Hancock M. L. Ins. Co.,* 320 Pa. 65, 181 A. 587, and the following later cases: *Indovina v. Metropolitan Life Ins. Co.,* 334 Pa. 167, 5 A. 2d 556; *Bailey v. Pacific M. Life Ins. Co.,* 336 Pa. 62, 6 A. 2d 770; *Kanatas v. Home Life Ins. Co.,* 325 Pa. 93, 189 A. 293; *Loder v. Metropolitan Life Ins. Co.,* 128 Pa. Superior Ct. 155, 193 A. 403; *Boltz v. Metropolitan Life Ins. Co.,* 128 Pa. Superior

Ct. 147, 193 A. 400; *Ratkovic v. Metropolitan Life Ins. Co.*, 126 Pa. Superior Ct. 492, 191 A. 201; *Soltaniuk v. Metropolitan Life Ins. Co.*, 133 Pa. Superior Ct. 139, 2 A. 2d 501; *Mutual Life Ins. Co. v. Bamford*, 132 Pa. Superior Ct. 255, 200 A. 907.

In this case, the applicant signed his application for insurance on November 18, 1935, and was required to answer the following questions in connection with his medical examination, the questions and answers forming part of his application and of the policy contract, if issued. "5. Have you ever been an inmate of, or have you ever received treatment at an asylum, hospital, sanatorium or cure? If yes, give date, duration, name of ailment and name of institution." His answer was, "Right inguinal hernia operation 1918 Pennsylvania Hospital."

"12(f) Have you ever had any surgical operation?" Answer, "No".

"12(g) Have you consulted a physician for any ailment or disease not included in your above answers" [Questions 11(a) to (d) and 12(a) to (e), all of which he had answered "No"] Answer, "No".

"13. What physician or physicians, if any, not named above have you consulted or been treated by within the last five years and for what illness or ailment. *If none so state.*" Answer, "None".

It was shown by uncontradicted records of St. Joseph's Hospital, that the insured had been admitted to that hospital on May 27, 1935 and that the next day an operation had been performed by Dr. Herrman, in the course of which the patient was put under an anesthetic and a lump or mass about four inches by three inches, by two inches, had been removed from under his left arm. An examination of the lump removed from the insured's body showed that he had Hodgkin's disease, a rare and unusual disease which invariably causes death. It may be noted that the disease manifests itself only by the formation of a lump

or lumps in the tissues of the body, and one afflicted with the disease may be ignorant of its presence until the final stages are reached. The insured was not advised of the real nature of his ailment by Dr. Herrman, but was referred back to his family physician and he was advised by his family physician, after consulting Dr. Herrman, to take X-ray treatments at the University Hospital.

The records of the latter hospital show that X-ray treatments were there given the insured by Dr. Chamberlin, at the place where the growth had been removed, on June 12, June 13, June 27, July 30, October 1 (2 treatments) and October 8, 1935. On October 22, 1935 he returned to the hospital and complained of pain in his left arm and thorax. A blood count was made and he was directed to return in one week. On November 2, 1935 two X-ray treatments were given him at the hospital. On November 5, less than two weeks before he signed the application for insurance, another treatment was given, and the hospital records show that on that day a lump about the size of half a lemon had recurred and was visible at the same location under the insured's left arm. Thereafter X-ray treatments were given him at the same hospital on November 12, six days before he signed the application, and on November 26 and 30, December 3, 5, 7, 10, 12 and 14, and January 9, 11, 14 and 16, 1936, following the signing. He died on February 11, 1936 of a pulmonary hemorrhage, contributed to by Hodgkin's disease, with a known duration since May, 1935.

The authorities are clear that the fact that the insured was suffering from Hodgkin's disease on November 18, 1935, when he signed the application for insurance, would not of itself have prevented a recovery in this action, for it is fairly well established that no one told him that he had that disease or the seriousness of the ailment. But he did know, and was bound to reveal in his answers to the medical examination

questions that he had been an inmate of St. Joseph's Hospital and had received treatment there and that a surgical operation had been performed upon him there, less than six months before, and that he had received X-ray treatments at the University Hospital at the site of his operation at frequent intervals from June 12 to November 12, 1935. If he remembered a hernia operation which occurred seventeen years before, he was bound to recall the operation in a hospital less than six months before, and the eleven X-ray treatments in another hospital the last one of which had been given him less than a week before: *Soltaniuk v. Metropolitan Life Ins. Co.,* supra, p. 142: *Gimbel v. Aetna Life Ins. Co.,* 95 Pa. Superior Ct. 1, 4.

As we said in the last mentioned case, 95 Pa. Superior Ct. 1, p. 4: "Whether or not he knew the diseases from which he was suffering, both of which were in the list which he represented that he had never had, he certainly knew, and was bound to know, the falsity of his answers to the ninth and tenth questions in his application ...... His knowledge of these facts did not depend on advice or information received from a physician, but was a matter peculiarly within his own experience. The materiality of questions nine and ten and their answers, is conceded by appellant. Under the decisions it could not be otherwise. The evidence of the falsity of these answers was given by his employer, his attending physician, and the medical director and attending physicians at the Lutheran Hospital, and the hospital records. It was clear, precise, indubitable and uncontradicted and was of such a character that a capricious disbelief of it should not be permitted: *Timlin v. American Patriots,* 249 Pa. 465, 469 [95 A. 104]; *Moncur v. Western Life Ind. Co.,* 269 Pa. 213, 217 [112 A. 476]; *McEntee v. N. Y. Life Ins. Co.,* 79 Pa. Superior Ct. 457. In the light of this evidence the court below was justified in entering judgment for the defendant non obstante veredicto because of the insured's knowing and

wilful misrepresentation of a material fact, amounting to a concealment of material information concerning his past state of health."

The information concealed and not imparted by this insured was material to the risk: *Indovina v. Metropolitan Life Ins. Co.,* supra, pp. 168, 169, 172; *March v. Metropolitan Life Ins. Co.,* 186 Pa. 629, 643, 40 A. 1100; *New York Life Ins. Co. v. Brandwene,* 316 Pa. 218, 223, 172 A. 669; *Baxter v. New York Life Ins. Co.,* 115 Pa. Superior Ct. 287, 293, 175 A. 899; *Lutz v. Metropolitan Life Ins. Co.,* 186 Pa. 527, 531, 40 A. 1104; *Loder v. Metropolitan Life Ins. Co.,* supra, p. 160; *Soltaniuk v. Metropolitan Life Ins. Co.,* supra, p. 142; and in the absence of evidence to the contrary, of which there is none, it will be presumed that the contract was made in reliance upon the answers thus falsely given: *New York Life Ins. Co., v. Brandwene,* supra, p. 223: Restatement, Contracts, section 479. The application signed by this insured so provided.

An answer known to the insured to be false when made is presumptively fraudulent: *Evans v. Penn Mutual Life Ins. Co.,* supra, p. 553; *Kanatas v. Home Life Ins. Co.,* supra, p. 96; *Mutual Life Ins. Co. v. Bamford,* supra, p. 261; *Loder v. Metropolitan Life Ins. Co.,* supra, p. 160; *Ratkovic v. Metropolitan Life Ins. Co.,* supra, p. 497; *Indovina v. Metropolitan Life Ins. Co.,* supra, pp. 171, 172.

We are satisfied from a review of the whole record that the learned court below committed no error in directing a verdict for the plaintiff for only the amount of the premiums paid the insurer by the insured.

The judgment is affirmed.