**GRUSKIN v. NEW YORK LIFE INS. CO.**

No. 222.

District Court, W. D. Pennsylvania.

March 4, 1940.

Harry A. Heilman, of Kittanning, Pa., and Kountz & Fry, of Pittsburgh, Pa., for plaintiff.

William H. Eckert and Smith, Buchanan & Ingersoll, all of Pittsburgh, Pa., for defendant.

SCHOONMAKER, District Judge.

This is a suit by plaintiff, the beneficiary of a life insurance policy issued to her husband, John M. Gruskin, to recover from the defendant the face of the policy of $15,-000.

At the close of the evidence, this court directed a verdict for plaintiff for $1,152.-70, being the amount of the premiums paid upon the policy, with interest thereon.

We did this because in our opinion the policy was voided by false answers by John M. Gruskin to questions propounded in the medical history given in connection with his application for this insurance. The plaintiff contends that we erred in this conclusion and should have submitted the case to the jury under the Pennsylvania authorities as to good faith.

On June 14, 1937, the deceased, John M. Gruskin, applied for the policy of insurance involved in this case. He was asked the following questions, and made the answers thereto set respectively opposite each question:

" 7. B.  Have you ever been under observation of treatment in any hospital, asylum or sanitarium?  No.

" 8.  Have you ever consulted a physician or practitioner for or suffered from any ailment or disease of

   B. The Heart, Blood Vessels or Lungs?  No.

"10.  Have you ever consulted a physician or practitioner for any ailment or disease not included in your above answers?  No.

"11.  What physicians or practitioners, if any, not named above, have you consulted or been examined or treated by within the past five years?

| Name and Address | Date | Reason for Consultation, Examination or Treatment and Results |
|---|---|---|
| Dr. J. F. Allison, Ford City, Pa. | About 1935 | Insurance Examination" |

These answers were all false. In a history which Gruskin himself gave to Dr. Harris V. Lilga at the Cleveland Clinic, when he entered that institution June 2, 1938, he stated that he had been short of breath on exertion for fifteen years, with

22

no complete remission from this symptom; that about fifteen years ago, for a period of a few weeks, he had attacks of pain in the region of the heart and down one arm; that this pain would come on at any time; that this was diagnosed as angina, and he was sent to some Springs as a resort; that from that time on till about a year before his visit to the Clinic, he had noted only shortness of breath, so that he would have to stop and rest two or three times on walking from his home to his store, a distance of five or six blocks; that about a year before that visit to the Clinic, the shortness of breath began to grow worse, and he began to feel tired; that he had lost thirty pounds in weight in one year, and twenty pounds in the last six months. From July 21, 1930, to July 23, 1930, Gruskin was in the Montefiore Hospital in Pittsburgh. The history he gave that institution included shortness of breath and a tired feeling. From the fall of 1934 to June 14, 1937, as well as thereafter, Gruskin, at irregular intervals, consulted his family physician, Dr. James F. Allison, and also Dr. Julius H. Goldstein of Pittsburgh, in their professional capacities, complaining of indigestion, pain in the upper center part of his abdomen, shortness of breath and cough.

In August, 1935, Gruskin twice consulted Dr. E. C. Wasson at Cambridge Springs. His chief complaint to Dr. Wasson was shortness of breath and tiredness. Dr. Wasson diagnosed the case as myocarditis, a degeneration of the heart muscle.

On December 13, 1935, and on June 16, 1935, Dr. O. C. Campbell was consulted by Gruskin, who complained of gas in the stomach, and indicated that he had distress in the end of his breast-bone. Dr. Campbell made no diagnosis, and simply gave Gruskin medicine to relieve his distress.

Within a short time after the application for this insurance, on June 14, 1937, Gruskin consulted Dr. Charles W. Thompson on August 30, 1937. Dr. Thompson diagnosed Gruskin's ailment as "insufficiency of heart muscle." In this doctor's professional opinion, this heart ailment must have existed for at least six months. Dr. Goldstein testified he discovered definite evidence of myocarditis in the early part of October, 1937. In November, 1937, Gruskin was again at the Montefiore Hospital.

He was confined to his home from November 18, 1937, to January 1, 1938, when he resumed work, but continued to be partially disabled. From April, 1938, until his death he was totally disabled by this heart condition.

On this state of facts, we ruled that the plaintiff was entitled to recover only the premiums paid, $1,152.70. This was on the opinion of the Circuit Court of Appeals of this Circuit in Guardian Life Insurance Co. v. Clum, 3 Cir., 106 F.2d 592.

A review of the evidence in the instant case convinces us that there is no distinction between the Clum case and the one at bar. In both cases the answers of the applicant to questions concerning his medical history were admittedly false.

It is correct Federal procedure to give binding instructions to a jury when there is no evidence upon which a jury can proceed to find a verdict for the party upon whom the burden rests to produce it. See Pennsylvania R. Co. v. Chamberlain, 288 U. S. 333, 343, 53 S.Ct. 391, 77 L.Ed. 819. This procedure has been followed in many cases in this Circuit. See Enelow v. New York Life Insurance Co., 3 Cir., 83 F.2d 550, 551, 105 A.L.R. 493; De Roy v. New York Life Insurance Co., D.C., 52 F.2d 894, affirmed 3 Cir., 61 F.2d 317; Goldman v. New York Life Insurance Co., 3 Cir., 70 F.2d 513; Adamos v. New York Life Insurance Co., 3 Cir., 94 F.2d 943.

Even under the Pennsylvania doctrine which plaintiff seeks to invoke, there could be no recovery in the instant case. In a recent ruling of the Pennsylvania Supreme Court, in Bailey v. Pennsylvania M. Life Ins. Co., 336 Pa. 62, 6 A.2d 770, that court held that inquiries as to prior medical attendance are material to the risk; and that false answers necessarily permit the insurer to avoid the policy; and that if such falsity and the requisite bad faith appear from competent and uncontradicted documentary evidence, proofs of death, admissions in the pleadings, or from the uncontradicted testimony of plaintiff's own witnesses, a verdict may be directed for the insurer. Such testimony appears in the instant case, i. e., the proofs of death and disability, the testimony of plaintiff's witnesses, Dr. Allison and Dr. Goldstein, and plaintiff's own statement that her husband had been at Montefiore Hospital, that he had consulted Dr. Allison, that he had visited Dr. Goldstein.

We, therefore, conclude that plaintiff's motion for a new trial must be denied. An order may be submitted accordingly.